**Gary Lynn GEORGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00118–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 10, 2003.

Decided Aug. 5, 2003.

Paul E. Reeves, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

At approximately 1:30 a.m. on March 18, 2001, after hours of drinking, Gary Lynn George failed to negotiate a curve on South Lake Drive in Texarkana, driving his one-ton wrecker truck across the cen-

terline and colliding with a Mazda 626 driven by Jessica Noel Smyth, killing her on impact. A jury in the 202nd Judicial District Court of Bowie County convicted George of intoxication manslaughter [1] and found he used a deadly weapon in committing the offense. George was sentenced to twenty years' imprisonment and a fine of $10,000.00. On appeal, George argues that the prosecutor was guilty of improper jury argument and that the evidence is insufficient to sustain the deadly weapon finding. We affirm.

## Improper Jury Argument

In closing argument, the prosecutor asserted to the jury that George's accident reconstruction expert "was paid to come in here and say whatever it took to get [George] off."

*Improper Argument.*

The Texas Court of Criminal Appeals maintains a "special concern for final arguments that result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney." *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998) (quoting *Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App.1990)). We share that "special concern" and must determine whether the prosecutor's remark was improper.

In reviewing final arguments, reviewing courts must consider the remarks at issue in the context of the entire jury argument rather than isolated sentences. *Denison v. State,* 651 S.W.2d 754, 761 (Tex.Crim.App.1983). Closing argument should facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the admitted evidence alone. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). Proper

---

1. Tex. Pen.Code Ann. § 49.08 (Vernon 2003).

jury argument must encompass summation of evidence presented, reasonable deductions drawn from evidence, answers to opposing counsel's argument, or a plea for law enforcement. *Id.*

■ A comment on the credibility of a witness is permissible. "A prosecutor is allowed to argue that the witnesses for the defense are not worthy of belief." *Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex. Crim.App.1993). Jury argument that vouches for or questions the credibility of a witness is proper, so long as it involves a reasonable deduction from the evidence. *See Loar v. State*, 627 S.W.2d 399, 401 (Tex.Crim.App. [Panel Op.] 1981); *see also Delgado v. State*, 840 S.W.2d 594, 602 (Tex. App.-Corpus Christi 1992, no pet.). Similarly, it is proper for a prosecutor to attack the defense's argument rather than the defense counsel. *Howard v. State*, 896 S.W.2d 401, 405 (Tex.App.-Amarillo 1995, pet. ref'd); *see also Tilbury v. State*, 890 S.W.2d 219, 224 (Tex.App.-Fort Worth 1994, no pet.) (statement implying defendant dishonest not improper because statement did not directly accuse attorneys of lying or encouraging dishonesty).

■ The State may not, however, strike at a defendant over the shoulders of his or her counsel or personally attack the integrity of defense counsel. *See Summers v. State*, 147 Tex.Crim. 519, 521, 182 S.W.2d 720, 721–22 (1944). For instance, a prosecutor's argument constituted an improper personal attack on counsel when that prosecutor stated to the jury: "I would caution you, ladies and gentlemen, that they are both very experienced Defense lawyers. They know how to argue to get people off the charges they are charged with." *Orona*, 791 S.W.2d at 128; *see also Gomez v. State*, 704 S.W.2d 770 (Tex.Crim.App.1985) (improper jury argument when prosecutor stated defense counsel manufactured evidence and was paid to do anything to get defendant "off the hook").

■ It is "manifestly improper and prejudicial to the rights of the accused" for the prosecutor to contrast the ethical obligations of prosecutors with those of defense attorneys by arguing that defense counsel did not take the prosecutor's "sacred oath" to see that justice is done and that defense counsel wishes the jury to set a guilty man free. *Wilson v. State*, 938 S.W.2d 57, 60 (Tex.Crim.App.1996). It is also improper for a prosecutor to argue that defense counsel's "duty is to see that his client gets off even if it means putting on witnesses who are lying." *Bell v. State*, 614 S.W.2d 122, 123 (Tex.Crim.App.1981); *see also Bray v. State*, 478 S.W.2d 89, 89–90 (Tex.Crim.App.1972). While no one fixed rule emerges to determine what is improper jury argument, we look for argument that refers to defense counsel personally or argument that impugns opposing counsel's character. *See Mosley*, 983 S.W.2d at 259.

Here, the prosecutor's comment is similar in nature to that in *Bell* and constitutes an impermissible attack on defense counsel, although significantly less direct than the *Bell* attack. By asserting that defense expert, Richard Turner, was paid to say whatever it took to get George off, the prosecutor indirectly attacked the integrity of defense counsel by implying that counsel would allow, even encourage, a witness to give false testimony before the trial court in order to get a defendant off. We cannot say this comment qualifies as a permissible attack on the credibility of a witness because this argument does not rely on reasonable deductions from the evidence, as sanctioned by *Loar*, in order to question a witness' credibility. We do not find in the record any language indicating the prosecutor's statement was directed at the defense's argument or any

evidence that would support the prosecutor's implied charge against defense counsel.

*Preservation of Error.*

■■■ In order to preserve any error from improper jury argument, a party must object to the argument and pursue the objection until the trial court rules adversely. *Valencia v. State*, 946 S.W.2d 81, 81 (Tex.Crim.App.1997); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996). That is, a party must object to the argument, request an instruction for the jury to disregard, and then move for a mistrial. *Cockrell*, 933 S.W.2d at 89; *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim. App.1993).

■■■ An argument that attacks the character of a defendant's attorney is not a constitutional violation.[2] *Mosley*, 983 S.W.2d at 259. Instead, these arguments are simply outside proper jury argument, and allowing them would constitute "other errors" governed by Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R.APP. P. 44.2(b); *Mosley*, 983 S.W.2d at 259. That being so, an appellant cannot complain of improper jury argument for the first time on appeal. *See Cockrell*, 933 S.W.2d at 89.

■■■ Here, George made no objection to the argument. We conclude he failed to preserve error as to the prosecutor's jury argument by failing to object and pursue the objection to an adverse ruling. We overrule George's first point of error.

**2.** The Texas Court of Criminal Appeals overruled the former rule where counsel need not object to a statement that was so egregious that no objection, instruction, or motion could cure the error. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996) (overruling *Montoya v. State*, 744 S.W.2d 15, 37 (Tex. Crim.App.1987); *Romo v. State*, 631 S.W.2d 504, 505 (Tex.Crim.App.1982)).

## "Deadly Weapon" Evidence

Challenges to the sufficiency of the evidence to support a conviction require that we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App. 1981). More specifically, we must determine, viewing the evidence in such a light, whether any rational trier of fact could find beyond a reasonable doubt that a vehicle is used or exhibited as a deadly weapon. *Cates v. State*, 102 S.W.3d 735, 738 (Tex.Crim.App.2003).

■■■ To sustain a deadly weapon finding, we must find evidence that demonstrates the deadly weapon is used or exhibited during the transaction from which the felony conviction is obtained. *Id.* at 738. We must find in the record evidence that others are actually endangered, "not merely a hypothetical potential for danger if others had been present." *Id.* Anything, including a motor vehicle, which is actually used to cause the death of a human being, is a deadly weapon.[3] *Tyra v. State*, 897 S.W.2d 796, 799 (Tex.Crim.App.1995); *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim.App.1992). This is necessarily so, because a thing which actually causes death is, by Penal Code definition, "capable of causing death." *See* TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon 2003); *Tyra*, 897 S.W.2d at 799.

**3.** The Texas Penal Code includes as a deadly weapon "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon 2003).

■ The evidence at trial depicts the following events of the evening of March 17, 2001, and the early morning hours of March 18, 2001: Beginning at or after seven o'clock in the evening, George visited his sixteen-year-old neighbor for twenty to forty minutes, during which time George drank four to six beers. Later that evening, George went to a local pub, where he stayed for some hours and became so inebriated that, according to witnesses, he fell backward off a barstool. Throughout his time at the pub, George always seemed to have a drink in his hand. After leaving the pub, at approximately 1:30 a.m., George was driving his one-ton wrecker truck southbound on South Lake Drive when the accident occurred. The fireman who extracted George from the truck testified he smelled a "pretty strong" smell of alcohol on George's breath and in the truck. George admitted to the paramedic treating him that he had consumed a six-pack of beer. The emergency room doctor who treated George testified George appeared very inebriated on his arrival at the hospital.

Clear precedents support a deadly weapon finding with evidence similar to that in this record. A jury convicted defendant Tyra of involuntary manslaughter for causing the death of a man by reason of operating his vehicle while intoxicated. *Tyra*, 897 S.W.2d at 797. The jury further found Tyra used a deadly weapon in the commission of this offense. *Id.* Tyra argued that the jury's finding was inappropriate since there was no evidence he actually intended to use the vehicle in such a way as to cause serious bodily injury or death. *Id.* Relying on precedent and semantic analysis of the definition of a deadly weapon, that court rejected his argument. *Id.* at 798–99.

The Texas Court of Criminal Appeals rejected a similar argument a few months later. *See Walker v. State*, 897 S.W.2d 812, 814 (Tex.Crim.App.1995). In *Walker*, the appellant pled guilty to involuntary manslaughter by accident or mistake resulting from operation of a motor vehicle while intoxicated. *Id.* at 812. The jury found Walker used his vehicle as a deadly weapon in the commission of this offense. *Id.* Walker argued that the jury was not authorized to make such a finding because the evidence established he was operating his vehicle as a means of transportation. *Id.* at 813. Since there was no evidence of his intent to use the vehicle as a weapon, Walker argued, the jury was not permitted to make an affirmative finding he used a deadly weapon. *Id.* Relying on its reasoning in *Tyra*, the Texas Court of Criminal Appeals held that mere operation of a motor vehicle may constitute use of a deadly weapon and that no intent to use the vehicle as a weapon need be shown. *Id.* at 814.

In a case similar to the case before us, an individual was held to have used a deadly weapon when he drove while intoxicated, crossed over into oncoming traffic, and collided with a car nearly head-on, killing both passengers. *Ray v. State*, 880 S.W.2d 795, 795–96 (Tex.App.-Houston [1st Dist.] 1994, no pet.). The evidence at trial established that Ray was, in fact, legally intoxicated, had been driving erratically, and had collided with a pickup truck before causing the fatal collision with the car. *Id.* at 797. Additionally, direct evidence showed that the fatal collision occurred entirely within the eastbound lane of traffic, though Ray had been driving in the westbound lane. *Id.* Based on that evidence, the jury could have found beyond a reasonable doubt that Ray had driven his vehicle in such a way that it became a deadly weapon. *Id.*

Here, too, the State presented evidence sufficient to enable a rational trier of fact

to find beyond a reasonable doubt George operated his vehicle in such a way that it became a deadly weapon. The record demonstrates George used the vehicle as a deadly weapon "during the transaction from which" the felony conviction is obtained. The evidence established George drove his one-ton wrecker truck while intoxicated, causing the wreck which killed Smyth. It is this collision from which the jury convicted George of intoxication manslaughter. Clearly, the record also demonstrates that George's use of the vehicle posed an actual danger.

The State's evidence sufficiently established that George's truck crossed over the centerline into Smyth's lane. Expert testimony from Lieutenant Michael Henry and Officer Brian Griffith, both of the Texarkana, Texas, Police Department, pointed out the physical characteristics of the accident scene, from which they concluded George caused the collision. That evidence included the positioning of the vehicles, the fact that debris from the collision was found in Smyth's lane of traffic, and the location and nature of the marks left on the road by the vehicles. A resident of South Lake Drive testified he heard the accident and was able to tell by the sound of the engines that George was speeding as he came around the curve. George presented expert testimony from Turner that, based on Turner's examination of the accident scene photographs and his inspection of the vehicles, George was not at fault in causing the collision.

As the finder of fact, the jury serves as the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. TEX.CODE CRIM. PROC. ANN. art. 36.13 (Vernon 1981), art. 38.04 (Vernon 1979). When faced with the abundance of evidence contrary to Turner's position, the jury was put to a decision regarding conflicting testimonial evidence. The jury is empowered to consider that evidence along with and against all the other evidence presented at trial and measure Turner's credibility and weigh his testimony accordingly. Obviously, the jury weighed Turner's testimony and his credibility against all the physical evidence and expert testimony supporting the State's position and found the fact issues in favor of the State.

Viewing the evidence in a light most favorable to the verdict, we conclude the evidence was sufficient to allow a rational finder of fact to find that George operated his vehicle in a manner that rendered it a deadly weapon. We overrule George's second point of error.

We affirm the judgment of the trial court.