NO. 07-04-0237-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 15, 2005


______________________________



JIMMY DON COLEMAN, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;



NO. 2529; HON. DAVID MCCOY, PRESIDING


_______________________________



MEMORANDUM OPINION


________________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Appellant, Jimmy Don Coleman, appeals from his conviction for intoxication
manslaughter. Through eight issues, he contends that 1) the evidence is legally and
factually insufficient to show that he caused the collision which killed the decedent, 2) the
evidence is legally and factually insufficient to show that he was intoxicated at the time of
the collision, 3) the trial court erred in refusing his request for an instruction on the lesser-included offense of driving while intoxicated, 4) the trial court erred in admitting the
evidence of his blood alcohol content in violation of the federal and state constitutions, and
5) the trial court erred in refusing to grant a mistrial when a police officer testified to the
location of the collision. We affirm the judgment.

Issues 1 and 2 - Cause of Collision


 Through his first two issues, appellant challenges the legal and factual sufficiency
of the evidence to show that he caused the collision that killed W. D. Cook. We overrule
them.

 The standards by which we review the legal and factual sufficiency of evidence are
well established. We refer the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979), Sims v. State, 99 S.W.3d 600 (Tex. Crim. App. 2003), Zuliani v.
State, 97 S.W.3d 589 (Tex. Crim. App. 2003), and King v. State, 29 S.W.3d 556 (Tex. Crim.
App. 2000) for an explanation of them. 

 Next, to be convicted of intoxication manslaughter, one must operate a motor vehicle
in a public place, while intoxicated, and by reason of that intoxication cause the death of
another by accident or mistake. Tex. Pen. Code Ann. §49.08(a) (Vernon 2003). Appellant
argues that the evidence failed to establish a causal connection between his alleged
intoxication and the collision. This is purportedly so because it failed to illustrate that he
crossed into the decedent's lane of traffic and collided with the decedent's vehicle. We
disagree. 

 It is beyond dispute that questions implicating causation are generally for the jury
to decide. Thomas v. State, 756 S.W.2d 59, 61 (Tex. App.-Texarkana 1988, pet. ref'd). 
Here, the jury had before it the following evidence. First, Lena Cook (the decedent's wife
who was traveling with the decedent at the time of the collision) testified that she and her
husband were in the proper lane of traffic headed north when she saw a pair of headlights
coming at them at an angle just prior to being struck and, at this time, the decedent's
vehicle was traveling in the proper lane (i.e. the northbound lane). Second, Brandon
Colpetzer testified that he was traveling north on the same highway when he topped a hill
and observed two vehicles ahead of him; that of appellant was rolling backward and
eventually came to rest in the middle of both the north and southbound lanes. Prior to the
collision, appellant was traveling south. Third, Leslie Flores, who came upon the scene
after the collision, testified that one car (that later determined to be appellant's) lay in the
middle of the road facing east while the other vehicle (that of the decedent and Mrs. Cook)
lay on the right shoulder of the road facing west. Fourth, no debris or fluid from either
vehicle was found in the southbound lane; rather, it lay either in the northbound lane or the
shoulder of that lane. Fifth, a diagram of the scene illustrated that most if not all of 
appellant's vehicle came to rest in the northbound lane (though he was traveling south
before the accident) while the vehicle of the decedent (who was traveling north in the
northbound lane before the collision) came to rest outside of the northbound lane and
partially on the shoulder and runoff abutting the shoulder of the northbound lane. 

 Circumstantial evidence and the reasonable inferences drawn therefrom may be
used to establish a causal connection. Garcia v. State, 112 S.W.3d 839, 852 (Tex.
App.-Houston [14th Dist.] 2003, no pet.). While no one actually testified that they saw
appellant cross into the northbound lane of the decedent, circumstantial evidence permits
one to infer, beyond reasonable doubt, that such occurred. The discovery of appellant's
vehicle almost completely in the decedent's lane of travel after the collision, the location of
the debris in that same lane, the sight of appellant's vehicle rolling backwards in that lane
after the collision and as it faced the decedent's car are more than some evidence
supporting that inference. And, when one adds to this the absence of any evidence
indicating that the decedent somehow crossed into appellant's lane, then one is left to
wonder how else the wreck occurred if appellant did not cross into the decedent's lane. It
had to be one or the other, and the evidence is both legally and factually sufficient to
support the conclusion that appellant crossed the line. See George v. State, 117 S.W.3d
285, 291 (Tex. App.-Texarkana 2003, pet. ref'd) (noting that evidence such as the
positioning of the vehicles, location of debris from the vehicles, and the location and nature
of marks left on the road may be considered in assessing whether a driver crossed into
another lane before colliding with another vehicle). 

Issues 3, 4, 6, and 7 - Evidence of Intoxication


 Issues three, four, six and seven concern the admission of the blood alcohol test
administered at Shamrock General Hospital at the behest of an investigating state trooper.
Thus, we address them together. 

 Issues Six and Seven

 Via issues six and seven, appellant asserts that the test results were inadmissible
because the State failed to comply with §724.012 of the Transportation Code. Thus,
admitting the evidence deprived him of due process of law under the federal and state
constitutions. We disagree and overrule the issues.

 Whether the trial court erred in admitting a piece of evidence depends upon whether
it abused its discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). 
Such an abuse arises when the decision falls outside the zone of reasonable disagreement. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). Additionally, §724.012
applies when the individual from whom the sample is being taken is arrested. See Tex.
Transp. Code Ann. §724.012(b)(1) (Vernon Supp. 2004-05) (stating that an officer shall
require the taking of a specimen of the person's blood or breath if "the officer arrests the
person . . . ."). Appellant argues that he was under arrest because he was not free to leave
the hospital at the time the sample was taken. 

 That one has his liberty restricted or is prohibited from leaving the presence of an
officer does not necessarily constitute an arrest. If this were not so, then most every
temporary detention would be an arrest because during the period of detention, the
detainee is not free to leave. See Francis v. State, 896 S.W.2d 406, 412 (Tex.
App.-Houston [1st Dist.] 1995, pet. ref'd) (noting that the temporary detention did not
constitute an arrest simply because appellant was actually restrained and not free to leave). 
Nor is the fact that one is not told that he is free to leave determinative. Indeed, it may well
be that the individual is not free to leave, such as in a temporary detention and, as
mentioned above, that itself does not render the detention an arrest. Moreover, no officer
barred appellant from leaving the hospital after his blood was sampled. If he was under
arrest, it is unlikely that he would have been free to so exercise his liberty. Nor did any
officer accompany him when he traveled from the local hospital in Shamrock to one in
Amarillo. Nor were guards stationed outside his hospital room to prevent his departure. 
Furthermore, the investigating officer expressly testified that he opted not to arrest
appellant given the seriousness of his injuries, the probability that he would have to be
transported to Amarillo for further medical care, and the officer's hesitance to have law
enforcement personnel in attendance of appellant while under medical care. 

 An arrest occurs when a person's liberty is restricted or restrained by physical force
or submission to authority, and a reasonable person in the suspect's position would have
understood the situation to constitute a restraint on freedom of movement to the degree
associated with a formal arrest. Medford v. State, 13 S.W.3d 769, 773-74 (Tex. Crim. App.
2000). The absence of physical restraint, the absence of law enforcement personnel
around appellant and his room while in the hospital, his ability to leave the hospital once
his blood was taken, and the officer's perception of appellant's injuries and refusal to make
an arrest because of them are indicia upon which one could rationally conclude that a
reasonable person would not perceive the manner of restraint being exercised as that
tantamount to a formal arrest. Consequently, the trial court did not abuse its discretion in
refusing to adopt appellant's contention that §724.012 of the Texas Transportation Code
applied. And, because it did not abuse its discretion, the admission of the evidence did not
deprive appellant of any constitutional right.

 Issues Three and Four 

 Through his third and fourth issues, appellant claims the evidence is legally and
factually insufficient to show that he was intoxicated at the time of the accident. Accepting
these claims is dependent, in part, upon appellant having successfully prosecuted his
issues six and seven. Yet, we overruled them and held that appellant's blood sample of
.032 was admissible. To that evidence we add: 1) appellant's signed statement wherein
he admitted to having several drinks at the American Legion and thinking that he would
have trouble driving due to fatigue and drinking alcohol on an empty stomach; 2) testimony
from witnesses indicating that they smelled alcohol on appellant's breath when he burped;
3) testimony from paramedics indicating that they smelled alcohol around appellant or his
vehicle; 4) testimony that appellant was uncooperative, resistant to care, and cursing, 5)
testimony not only that appellant's vehicle smelled like alcohol but also that seven 
unopened cans of beer, an empty one gallon jug of wine, and an empty pint bottle of
whiskey were in it; 6) testimony from Angela Kincanon that she served appellant three
drinks prior to the collision and that he fell asleep at the bar, 8) testimony from Richard
Wright, commander at the American Legion in Shamrock, that he asked appellant to leave
and walked him outside because he had been sleeping at the bar, and 9) evidence that
appellant crossed into the lane of oncoming traffic as he drove his car. This is some
evidence upon which a rational jury could conclude beyond reasonable doubt that at the
time of the collision, appellant lacked the normal use of his mental or physical faculties due
to the ingestion of alcohol. See Gowans v. State, 995 S.W.2d 787, 791 (Tex.
App.-Houston [1st Dist.] 1999, pet. ref'd) (holding that the evidence was sufficient when a
blood test administered about 1½ hours after the accident indicated an alcohol
concentration of almost twice the legal limit, the defendant smelled of alcohol, there was
no evidence that he drank anything alcoholic between the time of the accident and the
blood test, a witness saw the defendant speed up and slow down several times, and the
defendant stated he drank a bottle of malt liquor). Moreover, the finding is not clearly
wrong or outweighed by the remainder of the evidence. In other words, the verdict has
both legally and factually sufficient evidentiary support, and issues three and four are
overruled. 

Issue 5 - Charge on Lesser-Included Offense


 Appellant contends, in his fifth issue, that he should have received a charge on the
lesser-included offense of driving while intoxicated. We disagree and overrule it.

 The allegation is founded upon the belief that no evidence satisfied the causal link
between appellant's intoxication and the collision, i.e. no evidence illustrated that appellant
crossed over into the decedent's lane of traffic. Yet, we are cited to no evidence of record
tending to indicate that the collision occurred for some reason other than appellant crossing
the center line and striking Cook's vehicle. Nor have we found any. Indeed, as previously
discussed, we are unable to see how else the collision occurred. 

 To be entitled to an instruction on a lesser offense, the evidence must illustrate it to
be a valid rational alternative to the charged offense. Threadgill v. State, 146 S.W.3d 654,
665 (Tex. Crim. App. 2004). Because it does not do so here, the trial court acted correctly
in refusing to submit the charge. 

Issue 8 - Refusal to Grant Mistrial


 In his final issue, appellant claims the trial court erred in refusing to grant a mistrial
when Trooper Richard Gribble violated the motion in limine by testifying about the location
of the collision. We overrule the issue.

 During trial, the State questioned Gribble about the location of the vehicles after the
collision. As part of his response, he stated that a particular photograph "depicts where the
vehicles - - where this vehicle would have been traveling going northbound and the white
vehicle would have been on the wrong side of the road, coming towards . . . ." Appellant
objected to the utterance, and the trial court sustained the objection. So too did it not only
instruct the jury to disregard the comment but also questioned each juror about his or her
ability to actually disregard it when deliberating. Each indicated that he or she could. 

 Whether the trial court erred in refusing to grant a mistrial depends upon whether
it abused its discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). As
previously stated, such an abuse arises when the decision falls outside the zone of
reasonable disagreement. Montgomery v. State, 810 S.W.2d at 391. Since 1) an
instruction to disregard will generally cure any error in an improper question and answer,
Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000), 2) it is presumed that jurors
will follow such an instruction, Wesbrook v. State, 29 S.W.3d 103, 116 (Tex. Crim. App.
2001), 3) the trial court so instructed the jurors at bar, and 4) each juror expressly informed
the court that he or she could, we cannot say that the trial court's refusal to grant a mistrial
fell outside the zone of reasonable disagreement.

 Having overruled each issue, we affirm the judgment.


 Brian Quinn

 Chief Justice


Do not publish.