NO. 07-04-0237-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 15, 2005
_____

JIMMY DON COLEMAN,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 2529; HON. DAVID MCCOY, PRESIDING
_____

***MEMORANDUM OPINION***
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Appellant, Jimmy Don Coleman, appeals from his conviction for intoxication manslaughter. Through eight issues, he contends that 1) the evidence is legally and factually insufficient to show that he caused the collision which killed the decedent, 2) the evidence is legally and factually insufficient to show that he was intoxicated at the time of the collision, 3) the trial court erred in refusing his request for an instruction on the lesser-included offense of driving while intoxicated, 4) the trial court erred in admitting the

evidence of his blood alcohol content in violation of the federal and state constitutions, and 5) the trial court erred in refusing to grant a mistrial when a police officer testified to the location of the collision. We affirm the judgment.

### *Issues 1 and 2 - Cause of Collision*

Through his first two issues, appellant challenges the legal and factual sufficiency of the evidence to show that he caused the collision that killed W. D. Cook. We overrule them.

The standards by which we review the legal and factual sufficiency of evidence are well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Sims v. State,* 99 S.W.3d 600 (Tex. Crim. App. 2003), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000) for an explanation of them.

Next, to be convicted of intoxication manslaughter, one must operate a motor vehicle in a public place, while intoxicated, and by reason of that intoxication cause the death of another by accident or mistake. TEX. PEN. CODE ANN. §49.08(a) (Vernon 2003). Appellant argues that the evidence failed to establish a causal connection between his alleged intoxication and the collision. This is purportedly so because it failed to illustrate that he crossed into the decedent's lane of traffic and collided with the decedent's vehicle. We disagree.

It is beyond dispute that questions implicating causation are generally for the jury to decide. *Thomas v. State,* 756 S.W.2d 59, 61 (Tex. App.–Texarkana 1988, pet. ref'd). Here, the jury had before it the following evidence. First, Lena Cook (the decedent's wife who was traveling with the decedent at the time of the collision) testified that she and her

2

husband were in the proper lane of traffic headed north when she saw a pair of headlights coming at them at an angle just prior to being struck and, at this time, the decedent's vehicle was traveling in the proper lane (*i.e.* the northbound lane). Second, Brandon Colpetzer testified that he was traveling north on the same highway when he topped a hill and observed two vehicles ahead of him; that of appellant was rolling backward and eventually came to rest in the middle of both the north and southbound lanes. Prior to the collision, appellant was traveling south. Third, Leslie Flores, who came upon the scene after the collision, testified that one car (that later determined to be appellant's) lay in the middle of the road facing east while the other vehicle (that of the decedent and Mrs. Cook) lay on the right shoulder of the road facing west. Fourth, no debris or fluid from either vehicle was found in the southbound lane; rather, it lay either in the northbound lane or the shoulder of that lane. Fifth, a diagram of the scene illustrated that most if not all of appellant's vehicle came to rest in the northbound lane (though he was traveling south before the accident) while the vehicle of the decedent (who was traveling north in the northbound lane before the collision) came to rest outside of the northbound lane and partially on the shoulder and runoff abutting the shoulder of the northbound lane.

Circumstantial evidence and the reasonable inferences drawn therefrom may be used to establish a causal connection. *Garcia v. State,* 112 S.W.3d 839, 852 (Tex. App.–Houston [14[th] Dist.] 2003, no pet.). While no one actually testified that they saw appellant cross into the northbound lane of the decedent, circumstantial evidence permits one to infer, beyond reasonable doubt, that such occurred. The discovery of appellant's vehicle almost completely in the decedent's lane of travel after the collision, the location of the debris in that same lane, the sight of appellant's vehicle rolling backwards in that lane

3

after the collision and as it faced the decedent's car are more than some evidence supporting that inference. And, when one adds to this the absence of any evidence indicating that the decedent somehow crossed into appellant's lane, then one is left to wonder how else the wreck occurred if appellant did not cross into the decedent's lane. It had to be one or the other, and the evidence is both legally and factually sufficient to support the conclusion that appellant crossed the line. *See George v. State,* 117 S.W.3d 285, 291 (Tex. App.–Texarkana 2003, pet. ref'd) (noting that evidence such as the positioning of the vehicles, location of debris from the vehicles, and the location and nature of marks left on the road may be considered in assessing whether a driver crossed into another lane before colliding with another vehicle).

### *Issues 3, 4, 6, and 7 - Evidence of Intoxication*

Issues three, four, six and seven concern the admission of the blood alcohol test administered at Shamrock General Hospital at the behest of an investigating state trooper. Thus, we address them together.

*Issues Six and Seven*

Via issues six and seven, appellant asserts that the test results were inadmissible because the State failed to comply with §724.012 of the Transportation Code. Thus, admitting the evidence deprived him of due process of law under the federal and state constitutions. We disagree and overrule the issues.

Whether the trial court erred in admitting a piece of evidence depends upon whether it abused its discretion. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Such an abuse arises when the decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). Additionally, §724.012

4

applies when the individual from whom the sample is being taken is arrested. *See* TEX. TRANSP. CODE ANN. §724.012(b)(1) (Vernon Supp. 2004-05) (stating that an officer shall require the taking of a specimen of the person's blood or breath if "the officer arrests the person . . . ."). Appellant argues that he was under arrest because he was not free to leave the hospital at the time the sample was taken.

That one has his liberty restricted or is prohibited from leaving the presence of an officer does not necessarily constitute an arrest. If this were not so, then most every temporary detention would be an arrest because during the period of detention, the detainee is not free to leave. *See Francis v. State*, 896 S.W.2d 406, 412 (Tex. App.–Houston [1st Dist.] 1995, pet. ref'd) (noting that the temporary detention did not constitute an arrest simply because appellant was actually restrained and not free to leave). Nor is the fact that one is not told that he is free to leave determinative. Indeed, it may well be that the individual is not free to leave, such as in a temporary detention and, as mentioned above, that itself does not render the detention an arrest. Moreover, no officer barred appellant from leaving the hospital after his blood was sampled. If he was under arrest, it is unlikely that he would have been free to so exercise his liberty. Nor did any officer accompany him when he traveled from the local hospital in Shamrock to one in Amarillo. Nor were guards stationed outside his hospital room to prevent his departure. Furthermore, the investigating officer expressly testified that he opted not to arrest appellant given the seriousness of his injuries, the probability that he would have to be transported to Amarillo for further medical care, and the officer's hesitance to have law enforcement personnel in attendance of appellant while under medical care.

5

An arrest occurs when a person's liberty is restricted or restrained by physical force or submission to authority, and a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree associated with a formal arrest. *Medford v. State,* 13 S.W.3d 769, 773-74 (Tex. Crim. App. 2000). The absence of physical restraint, the absence of law enforcement personnel around appellant and his room while in the hospital, his ability to leave the hospital once his blood was taken, and the officer's perception of appellant's injuries and refusal to make an arrest because of them are indicia upon which one could rationally conclude that a reasonable person would not perceive the manner of restraint being exercised as that tantamount to a formal arrest. Consequently, the trial court did not abuse its discretion in refusing to adopt appellant's contention that §724.012 of the Texas Transportation Code applied. And, because it did not abuse its discretion, the admission of the evidence did not deprive appellant of any constitutional right.

*Issues Three and Four*

Through his third and fourth issues, appellant claims the evidence is legally and factually insufficient to show that he was intoxicated at the time of the accident. Accepting these claims is dependent, in part, upon appellant having successfully prosecuted his issues six and seven. Yet, we overruled them and held that appellant's blood sample of .032 was admissible. To that evidence we add: 1) appellant's signed statement wherein he admitted to having several drinks at the American Legion and thinking that he would have trouble driving due to fatigue and drinking alcohol on an empty stomach; 2) testimony from witnesses indicating that they smelled alcohol on appellant's breath when he burped; 3) testimony from paramedics indicating that they smelled alcohol around appellant or his

6

vehicle; 4) testimony that appellant was uncooperative, resistant to care, and cursing, 5) testimony not only that appellant's vehicle smelled like alcohol but also that seven unopened cans of beer, an empty one gallon jug of wine, and an empty pint bottle of whiskey were in it; 6) testimony from Angela Kincanon that she served appellant three drinks prior to the collision and that he fell asleep at the bar, 8) testimony from Richard Wright, commander at the American Legion in Shamrock, that he asked appellant to leave and walked him outside because he had been sleeping at the bar, and 9) evidence that appellant crossed into the lane of oncoming traffic as he drove his car. This is some evidence upon which a rational jury could conclude beyond reasonable doubt that at the time of the collision, appellant lacked the normal use of his mental or physical faculties due to the ingestion of alcohol. *See Gowans v. State,* 995 S.W.2d 787, 791 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd) (holding that the evidence was sufficient when a blood test administered about 1½ hours after the accident indicated an alcohol concentration of almost twice the legal limit, the defendant smelled of alcohol, there was no evidence that he drank anything alcoholic between the time of the accident and the blood test, a witness saw the defendant speed up and slow down several times, and the defendant stated he drank a bottle of malt liquor). Moreover, the finding is not clearly wrong or outweighed by the remainder of the evidence. In other words, the verdict has both legally and factually sufficient evidentiary support, and issues three and four are overruled.

### *Issue 5 - Charge on Lesser-Included Offense*

Appellant contends, in his fifth issue, that he should have received a charge on the lesser-included offense of driving while intoxicated. We disagree and overrule it.

7

The allegation is founded upon the belief that no evidence satisfied the causal link between appellant's intoxication and the collision, *i.e.* no evidence illustrated that appellant crossed over into the decedent's lane of traffic. Yet, we are cited to no evidence of record tending to indicate that the collision occurred for some reason other than appellant crossing the center line and striking Cook's vehicle. Nor have we found any. Indeed, as previously discussed, we are unable to see how else the collision occurred.

To be entitled to an instruction on a lesser offense, the evidence must illustrate it to be a valid rational alternative to the charged offense. *Threadgill v. State,* 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). Because it does not do so here, the trial court acted correctly in refusing to submit the charge.

### Issue 8 - Refusal to Grant Mistrial

In his final issue, appellant claims the trial court erred in refusing to grant a mistrial when Trooper Richard Gribble violated the motion in limine by testifying about the location of the collision. We overrule the issue.

During trial, the State questioned Gribble about the location of the vehicles after the collision. As part of his response, he stated that a particular photograph "depicts where the vehicles - - where this vehicle would have been traveling going northbound and the white vehicle would have been on the wrong side of the road, coming towards . . . ." Appellant objected to the utterance, and the trial court sustained the objection. So too did it not only instruct the jury to disregard the comment but also questioned each juror about his or her ability to actually disregard it when deliberating. Each indicated that he or she could.

Whether the trial court erred in refusing to grant a mistrial depends upon whether it abused its discretion. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). As

8

previously stated, such an abuse arises when the decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d at 391. Since 1) an instruction to disregard will generally cure any error in an improper question and answer, *Ovalle v. State,* 13 S.W.3d 774, 783 (Tex. Crim. App. 2000), 2) it is presumed that jurors will follow such an instruction, *Wesbrook v. State,* 29 S.W.3d 103, 116 (Tex. Crim. App. 2001), 3) the trial court so instructed the jurors at bar, and 4) each juror expressly informed the court that he or she could, we cannot say that the trial court's refusal to grant a mistrial fell outside the zone of reasonable disagreement.

Having overruled each issue, we affirm the judgment.


        Brian Quinn
        Chief Justice


Do not publish.