In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00178-CR**

_____

**EX PARTE PAUL ROBERT WASSERLOOS**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 07-10-10091-CR**

## MEMORANDUM OPINION

Paul Robert Wasserloos appeals the trial court's order denying his application for writ of habeas corpus. Appellant argues that the trial court erred in denying relief because he was denied the effective assistance of counsel at trial. We affirm the order of the trial court.

## I. BACKGROUND

In August 2007, Wasserloos, a certified public accountant, spent the day out of the office, meeting with different clients. After his last meet ended around 6:30 p.m., Wasserloos drove to an adult entertainment club in Houston. Wasserloos told the jury he was at the club from around 7:00 p.m. until 11:00 p.m., during

1

which time he consumed three scotch and water beverages, along with food. Wasserloos left the club with one of the female employees, to whom he offered a ride home. Wasserloos stated he drove about an hour to The Woodlands area, but because his companion was intoxicated, she was unable to give him proper directions to her intended destination. Wasserloos spent another hour driving up and down the freeway trying to find the correct exit.

Shortly after 1:00 a.m., Cody Cullar, a trooper with the Texas Department of Public Safety, stopped Wasserloos for driving 78 miles per hour in a 65 mile per hour speed zone. Cullar smelled the odor of alcohol on Wasserloos's breath and Wasserloos admitted that he had consumed alcohol. Cullar also observed that Wasserloos's speech was slurred and Cullar had a difficult time understanding what Wasserloos was saying. Cullar administered standard field sobriety tests and observed clues on each test that indicated Wasserloos was intoxicated. Cullar observed Wasserloos continually opening his mouth and licking his lips, which Cullar attributed to "dry mouth;" a common side-effect of intoxication. Cullar arrested Wasserloos for driving while intoxicated. Wasserloos declined to provide a breath sample.

At trial, Wasserloos attributed his slurred speech and poor performance on the field sobriety tests to several claimed disabilities.[1] Wasserloos presented evidence that his slurred speech was the result of auditory dyslexia, and his poor performance on the field sobriety tests was caused by a variety of physical problems, including a left knee replacement, a right arthritic knee, bunions, and hammertoes. He also presented evidence that he was roughly 50 pounds overweight. During trial, defense counsel attempted to introduce business records affidavits, a report from a speech therapist, and medical records from an orthopedic doctor, to corroborate witness testimony regarding Wasserloos's claimed disabilities. However, the trial court sustained the State's objection to the admissibility of this evidence on the basis that defense counsel failed to provide the State with proper notice.

In his direct appeal, Wasserloos argued, in part, that defense counsel was ineffective for failing to give the State proper notice of the filing of the business records and the affidavits of his medical experts. *Wasserloos v. State*, No. 09-09-

---

[1] The trial record does not appear as an exhibit to the application for habeas corpus, and it is unclear from the record whether it was properly before the trial court at the hearing. However, both parties appear to concede that the trial record was relied on by the trial court in denying the application for habeas relief. Both parties cited and relied upon the trial record in presenting their arguments on appeal, and the trial record was designated by appellant to be part of the appellate record before us. Therefore, we rely upon the trial record in order to address the merits of the issues presented on appeal.

00225-CR, 2010 WL 1711753, at *2-3 (Tex. App.—Beaumont Apr. 28, 2010, pet. ref'd). We held that even if defense counsel's failure to properly notify the State resulted in the inadmissibility of the documents, Wasserloos failed to show a reasonable probability that but for defense counsel's alleged ineffectiveness, the result of the proceeding would have been different. *Id.* at *2 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We affirmed the judgment of conviction. *Id.* at *7.

Subsequent to our decision in his direct appeal, Wasserloos filed a post-conviction writ of habeas corpus alleging that he was denied effective assistance of counsel at trial because defense counsel failed to present expert medical testimony to corroborate the existence of Wasserloos's claimed disabilities. Specifically, Wasserloos argued that after the trial court excluded the medical records, defense counsel failed to call the doctor and speech therapist to provide live testimony as to the contents of those records and failed to request a continuance to obtain their live testimony. In addition, Wasserloos alleged that defense counsel was deficient in failing to object to a comment by the prosecutor during his cross-examination of the defense expert witness. Wasserloos asserted that but for counsel's deficient performance, there was a reasonable probability that the jury would have acquitted

4

Wasserloos or deadlocked.[2]  After reviewing the pleadings and hearing argument from the parties, the trial court denied Wasserloos's application for habeas corpus. The trial court entered findings of fact and conclusions of law. This appeal followed.

## II. STANDARD OF REVIEW

An applicant must prove his claim for habeas corpus relief by a preponderance of the evidence.  *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Scott*, 190 S.W.3d 672, 673 (Tex. Crim. App. 2006) (per curiam order).  We review a trial court's order denying habeas corpus relief for an abuse of discretion.  *See Kniatt*, 206 S.W.3d at 664.  We view the facts in the light most favorable to the trial court's ruling and afford almost total deference to the trial court's fact findings, particularly when those fact findings are based upon an evaluation of credibility and demeanor.  *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte*

---

[2] Wasserloos relies on the fact that the jury sent out a note during deliberations indicating it was deadlocked 9-3.  Over the State's objection, the trial court gave the jury an "*Allen*" charge, after which they convicted Wasserloos. *Wasserloos*, 2010 WL 1711753, at *4; *see Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) (citing *Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896) (explaining that an Allen charge is a supplemental charge sometimes given to a jury to remind the jury that if it is unable to reach a verdict, "a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve.")).

*Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007); *see also Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We apply the same deference to the trial court's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Legrand*, 291 S.W.3d 31, 36 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). If the resolution of the ultimate question turns solely on question of law, we review the determination de novo. *Id*.

In order to establish a right to habeas corpus relief on the ground of ineffective assistance of counsel, appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694. The benchmark of a claim for ineffective assistance of counsel "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. Our review of counsel's performance is "highly deferential." *Id*. at 689. We must make every effort to "eliminate the distorting effects of hindsight" and evaluate counsel's conduct from the perspective at the time. *Id*.

The United States Supreme Court elaborated on *Strickland's* prejudice standard:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, 131 S. Ct. 770, 791-92, 178 L. Ed. 2d 624 (2011) (internal citations and quotations omitted).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

A. Failure to Call Medical Experts to Testify at Trial

Defense counsel presented testimony from three long-time friends of Wasserloos regarding Wasserloos's disabilities. All three witnesses testified regarding Wasserloos's physical condition, as well as their knowledge of his auditory dyslexia and its affect on his speech. In summary, the witnesses testified that when Wasserloos gets excited or nervous he tends to talk too fast or slur his words. They also explained that he has problems with his knees and feet, he is not able to walk straight, and he cannot stand for very long. In addition, each of the three witnesses testified that they had viewed the traffic-stop video and that

7

Wasserloos appeared the same on the video as he normally appears. Wasserloos also testified regarding his physical condition and auditory dyslexia.

Wasserloos argues that the testimony of medical experts with no personal interest in the outcome of the trial would have been significantly more persuasive to the jury than the lay testimony of Wasserloos and his friends. However, the defensive theory was not based solely on the testimony of Wasserloos and his friends. Defense counsel also presented testimony from a field sobriety expert, Lance Platt. Platt testified that he served as a police officer for nine years before he went to work for Texas Engineering Extension Services, a branch of the Texas A&M University system, where he helped train police officers throughout the State of Texas in the administration of standard field sobriety tests.[3] Platt testified that he considers himself an expert in DWI detection and standardized field sobriety testing.

Platt told the jury he administered the standard field sobriety tests on Wasserloos in his office in November 2008 while Wasserloos was not under the influence of any intoxicants.[4] Platt testified that he observed four out of six clues

___

[3] Platt worked in that capacity from 1999 until 2002, when he started his own business.

[4] Prior to performing the field sobriety tests, Wasserloos blew into a portable breath test that was negative for the presence of alcohol. Wasserloos also stated

8

of intoxication during the horizontal gaze nystagmus test ("HGN"), three clues on the walk-and-turn test, and three clues on the one-leg stand test. Platt stated that Wasserloos told him he had been diagnosed with dyslexia "which [Platt testified] is a neurological disorder which just so happens to be the same [neurological] system" that the HGN test evaluates.[5] Platt told the jury he believes Wasserloos has nystagmus, or involuntary eye movement, all the time, regardless of whether he is intoxicated. Platt opined that Wasserloos did poorly on the walk-and-turn and one-leg stand tests on the night of his arrest because he is overweight, has knee problems, has bunions on his feet, and has problems with his legs. Platt explained that Wasserloos's physical problems "could cause him to exhibit a false positive" on the field sobriety tests. Platt stated that Wasserloos was not "a good candidate" for the walk-and-turn and one-leg stand test because of his "obvious physical impairment" prior to the introduction of alcohol into his system. Platt discussed other alternative divided attention tests that could have been administered. Platt testified that Wasserloos appeared to mentally comprehend everything he was

that he had not taken any central nervous system depressants, such as drugs, inhalants, or PCP.

[5] The State objected to this testimony on the basis that it was outside Platt's area of expertise. The trial court sustained the objection, however, the State failed to secure an instruction to the jury to disregard the testimony. Therefore, this evidence was before the jury and they were free to consider it. *See Estrada v. State*, 313 S.W.3d 274, 313 (Tex. Crim. App. 2010).

asked to do during the field sobriety tests, but he was physically unable to perform the tests satisfactorily. Platt told the jury that Wasserloos appeared the same in his office as he did on the video of the traffic stop, and opined that Wasserloos was not intoxicated at the time of his arrest.

1. Failure to Call Medical Experts to Testify Regarding the Contents of the Excluded Medical Records

As evidence in support of his application for writ of habeas corpus, Wasserloos attached affidavits from Sheryl Morales and William Granberry, the speech therapist and orthopedic specialist whose records were excluded at trial. In her affidavit, Morales detailed her evaluation of Wasserloos, explained that he exhibits characteristics of dyslexia and "speech/language/communication problems." Morales stated that Wasserloos appears to be "'cluttering,'" which she distinguished from "stuttering." She also noted that cluttering could be characteristic of slurred speech. Morales recommended that Wasserloos be referred to a learning disabilities specialist, a speech-language pathologist, and an audiologist for further evaluation. In his affidavit, Granberry detailed Wasserloos's physical condition based on his orthopedic evaluation of Wasserloos. Granberry stated that Wasserloos "suffers from severe bunions, flat feet, collapsed arches, and hammertoe deformities on both feet." Granberry concluded that Wasserloos was a candidate for reconstructive surgical correction of both feet and noted that his left

10

knee had been replaced and he was suffering from "mild degenerative arthritis" in the right knee. Neither Morales nor Granberry offered an opinion regarding how Wasserloos's physical condition may have affected his performance on the field sobriety tests.

In his application for writ of habeas corpus, Wasserloos argued that defense counsel was deficient in failing to call Morales and Granberry to testify regarding the contents of their excluded medical records. The State concedes that the defense counsel's failure to call medical experts to ensure the admission of the excluded medical records was likely deficient. On direct appeal, considering the vast amount of evidence presented to the jury regarding Wasserloos's physical condition, we concluded that even if counsel's lack of proper notice to the State resulted in the inadmissibility of the medical records, Wasserloos failed to show a reasonable probability that but for counsel's error the result of the proceeding would have been different. *See Wasserloos*, 2010 WL 1711753, at *3. We concluded that although the jury did not have the excluded documents, the record was replete with evidence of Wasserloos's physical problems, as well as evidence from three long-time friends that he suffers from auditory dyslexia, which causes him to slur his words. *Id.* We also found significant that the jury saw appellant perform the field

11

sobriety tests and heard him speak on the traffic-stop video, and observed him testify at trial. *Id.*

In the habeas hearing, defense counsel argued that the testimony of Wasserloos and his friends, regarding Wasserloos's condition, was uncorroborated. Wasserloos cites *Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005) for his contention that such omission rendered counsel's assistance ineffective. However, unlike in *Miller*, where defense counsel relied solely on the testimony of the defendant and her ex-husband to establish Miller's claim that at the time of the commission of the crime she was suffering from mental and emotional injuries, Platt provided expert testimony that corroborated Wasserloos's claim that his ability to perform the field sobriety tests was hindered by his disabilities. *Compare Miller*, 420 F.3d at 364-66.

The affidavits of Morales and Granberry provide no further information than what is set forth in the excluded medical records. Counsel is not required to prepare for every potential contingency. *Harrington*, 131 S. Ct. at 791. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* (quoting *Strickland*, 466 U.S. at 687); *see also Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). The constitutional right to effective assistance of counsel does not require counsel to be a "flawless strategist or tactician[.]"

12

*Harrington*, 131 S. Ct. at 791.  Nevertheless, even assuming that counsel's failure to call the medical experts to testify to the contents of the excluded records was deficient, we conclude that Wasserloos has failed to show a reasonable probability that but for the alleged error, the result of the proceeding would have been different.  *See Wasserloos*, 2010 WL 1711753, at *3.

2.  Failure to Conduct a Reasonable Investigation

Wasserloos appears to argue on appeal from the habeas corpus that defense counsel was deficient for failing to conduct a reasonable investigation and present other readily available evidence through expert testimony that would have raised a reasonable doubt.[6]  In support of this claim, Wasserloos attached to his application for habeas corpus, the affidavits of Timothy Sitter, another orthopedic specialist, and Ray Battin, a licensed psychologist.  Sitter's affidavit indicates that he did not evaluate Wasserloos until August 2011.  Battin's affidavit indicates that he evaluated Wasserloos in December 2011. There is nothing in the record to indicate that defense counsel contacted or consulted with either Sitter or Battin prior to trial.

---

[6] While Wasserloos did not make this argument in his written application for habeas corpus, he did make this argument to the trial court during the hearing on the application.  Therefore, Wasserloos preserved this issue for review.  *See* Tex. R. App. P. 33.1.

13

Like Granberry's affidavit, Sitter's affidavit detailed Wasserloos's physical condition, including his obesity, unstable knees, bunions, and the observation that he demonstrates poor balance when he stands on one leg, and he walks with a limp. Sitter further stated that in his opinion Wasserloos's "orthopedic maladies impaired his ability to perform satisfactorily the standardized field sobriety tests when he was arrested in 2007[,]" as well as during Sitter's evaluation of Wasserloos in 2011. Sitter also stated that in his opinion Wasserloos would not be able to perform the standardized field sobriety tests satisfactorily "under any conditions, even if he is not intoxicated." Sitter opined that Wasserloos's performance on the standardized field sobriety tests "was the result of his orthopedic maladies and obesity, not the result of intoxication."

In his affidavit, Battin stated that Wasserloos's gross coordination was impaired as a result of his knee problems, and Wasserloos appeared to have mild to moderate hearing loss. Battin diagnosed Wasserloos with "dysarthric speech pattern," which he stated could cause Wasserloos to exhibit slurred speech. Battin concluded that Wasserloos met the criteria for a "Specific Learning Disability in basic reading skills; Auditory Processing Disorder; and a Dysarthria Disorder," and also stated that he would expect these disabilities to have caused Wasserloos difficulty when he attempted to perform the divided-attention standardized field

sobriety tests in 2007. Battin further stated that Wasserloos appeared the same during his evaluation as he did on the video of the traffic stop. Both experts stated in their affidavits that they would have testified to these conclusions if they had been called to testify at trial.[7]

A criminal defense attorney has a duty to make an independent investigation of the facts of a case. *Ex parte Welborn*, 785 S.W.2d 391, 395 (Tex. Crim. App. 1990). A breach of this duty may result in a finding that counsel rendered ineffective assistance when "the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In explaining the duty to investigate, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

"[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 131 S. Ct. at 791. It is apparent from the record that defense counsel was well versed in the

---

[7] Battin further stated in his affidavit that he would have been available to testify at Wasserloos's trial.

facts of the case, conducted an investigation, and prepared a defense prior to trial. Because there was no breath test or blood sample from Wasserloos, the State's case hinged on the testimony of the arresting officer, the field sobriety tests, and the video tape of the traffic stop. The defensive theory presented at trial was that Wasserloos's poor performance on the standardized field sobriety tests was a result of physical problems with his knees, legs, and feet. Wasserloos also attributed his slurred speech to auditory dyslexia. In addition to the testimony of Wasserloos and three lay witnesses, expert testimony was presented to the jury in support of this defensive theory. Not only did Platt testify that Wasserloos's performance on the walk-and-turn and one-leg stand test were a result of his physical disabilities, but he also presented testimony that sought to explain the arresting officer's observation of clues of intoxication on the HGN test, arguably the State's strongest evidence.[8] Wasserloos has not shown that he was prevented from presenting a viable defense to the jury.

Nor has Wasserloos otherwise established that defense counsel failed to adequately investigate Wasserloos's claimed disabilities. Significantly, defense counsel's affidavits, attached to Wasserloos's application for habeas relief, do not detail defense counsel's investigation of the case. In discussing his trial strategy,

---

[8] Notably, none of the expert affidavits presented as evidence in the habeas proceeding specifically addressed Wasserloos's performance on the HGN test.

16

defense counsel stated in his supplemental affidavit that prior to trial he discussed with Wasserloos "the possibility of calling the doctor and speech therapist" who evaluated Wasserloos, and "the decision was made not to call them." Defense counsel further stated that he could not recall whether he re-evaluated this decision with his client after the trial court excluded the related medical records. However, defense counsel's affidavits do not speak to his conduct or decisions with regard to his investigation or his failure to seek additional expert medical evaluations or opinions. *Compare Miller*, 420 F.3d at 359 (Defense counsel admitted in his affidavit, attached as evidence to defendant's habeas application, that he did not prepare much for the punishment phase because he thought the defendant would accept the plea bargain offer, and defense counsel conceded he could have obtained information from her doctors and called them to testify); *Compare Ex parte Briggs*, 187 S.W.3d 458, 466-67 (Tex. Crim. App. 2005) (Defense counsel conceded that he did not consult with medical experts before advising defendant to plead guilty because defendant could not pay for medical experts). On this record, Wasserloos has not established that defense counsel's investigation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88, 691.

17

3. Failure to Object to Prosecutor's Comment

Wasserloos argues additionally that defense counsel was ineffective for failing to object to a comment made by the prosecutor during his cross-examination of Platt. During the State's cross-examination of Platt the following exchange took place:

[State:]     You started out as a police officer; is that correct?

[Platt:]     I'm still a certified peace officer.

[State:]     You actually worked and made arrests. What agency did you work for?

[Platt:]     College Station.

[State:]     Okay. And what years did you do that?

[Platt:]     '90 to '99.

[State:]     So, for nine years out of your life you spent your time trying to put people away for DWI; is that correct?

[Platt:]     I spent my time enforcing the law. I never tried to put anybody away.

[State:]     You spent your time making arrests for DWI; is that correct?

[Platt:]     Amongst other things, yes.

          . . . .

[State:]     Then something happened and you left and you went to the dark side, as it is; is that correct?

18

[Platt:]    You know, I've always looked at justice as being blind, and I take offense to you saying that I'm on the dark side because there's --

[State:]    Okay.

[Platt:]    There's not a dark side to justice.  Justice is blind.  The chips fall where they may.

[State:]    You work primarily for defense attorneys; is that correct?

[Platt:]    Yes.

Wasserloos argued in his habeas application that counsel was ineffective for failing to object to the prosecutor's comment that Platt had gone from being employed by the police department to "the dark side."  Wasserloos contends that it is improper for the prosecutor to compare the character of prosecution witnesses, such as police officers, to the character of an expert retained for the defense, in the absence of a factual basis to do so.

Courts have found it is improper for a prosecutor to contrast the ethical obligations of the State with those of criminal defense attorneys by arguing that defense counsel did not take the prosecutor's sacred oath to see that justice is done or that defense counsel wishes to see a guilty man go free.  *Wilson v. State*, 938 S.W.2d 57, 58-60 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002); *cf. Bell v. State*, 614 S.W.2d 122,

19

123 (Tex. Crim. App. 1981). Generally, when determining whether jury argument is improper, courts consider whether the argument refers to defense counsel personally or if it impugns opposing counsel's character. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Trial counsel must also confine his arguments to matters supported by the evidence. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Jury argument that questions the credibility of a witness is proper, so long as it involves a reasonable deduction from the evidence. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *George v. State*, 117 S.W.3d 285, 287-88 (Tex. App.—Texarkana 2003, pet. ref'd).

While we agree the question was an improper attack on the defense expert's credibility, we conclude that Wasserloos has not established that but for defense counsel's failure to object, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. The comment at issue was not made during closing arguments. The reference to the "dark side" was made when the State questioned Platt about leaving the police department to provide consulting services primarily to criminal defense attorneys. Platt told the jury that "justice is blind" that he believes there is no "dark side" when it comes to ensuring justice is done. When taken in context, the prejudicial effect of the prosecutor's reference to the "dark side" appears slight at best. We cannot say that Wasserloos has established a

20

reasonable probability that but for counsel's failure to object to this comment, the result of the proceeding would have been different. *See id.*

Wasserloos has failed to show that the trial court abused its discretion in denying his application for writ of habeas corpus. We overrule Wasserloos's sole issue on appeal. We affirm the trial court's order denying Wasserloos's application for habeas corpus.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 25, 2012
Opinion Delivered March 27, 2013
Do not publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.

21