**Rodney GOWANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–97–00187–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 27, 1999.

Rehearing Overruled Aug. 6, 1999.

William F. Carter, Madisonville, for Appellant.

Tuck Moody McLain, Kelly T. Weeks, Anderson, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices O'CONNOR and TAFT.

## OPINION

MICHOL O'CONNOR, Justice.

A jury found Rodney Gowans, the appellant, guilty of intoxication manslaughter and assessed punishment at 60 years confinement. We affirm.

### Factual Background

At approximately 3:30 p.m. on an August day, George Sims (the complainant) was sitting in his parked car in the driveway of a private home located just off State Highway 30. The appellant was driving his car on Highway 30, when he suddenly veered off the highway and into the driveway. The appellant's car struck the passenger side of the complainant's car with enough force to send the complainant's car off the driveway and into a tree. The appellant's car bounced back onto the highway. There were no skid marks on the road to indicate the appellant applied his brakes before the collision. After the collision, two state troopers smelled alcohol on the appellant, and a blood test revealed his alcohol concentration to be 0.20. The complainant died nine days later.

### Sufficiency of the Evidence

In four points of error, the appellant challenges the legal and factual sufficiency of the evidence supporting the jury's finding that he operated a motor vehicle in a public place and that he was intoxicated at the time of the accident.

We review legal sufficiency by viewing the evidence in the light most favorable to the verdict to determine if any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Santellan v. State*, 939 S.W.2d 155, 160 (Tex.Crim.App.1997). If there is evidence that establishes guilt beyond a reasonable doubt and if the fact finder believes the evidence, we will not reverse the judgment for insufficient evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988); *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.). The jury is entitled to judge the credibility of the witnesses and may choose to believe all, some, or none of the witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986); *Reece*, 878 S.W.2d at 325. It is the jury's job to reconcile conflicts in the evidence. *Heïselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim.App.1995).

We review factual sufficiency by viewing all the evidence, not merely that evidence favorable to the verdict, to determine if the

verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Peoples v. State*, 928 S.W.2d 112, 118 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). If we find the evidence factually insufficient, we will reverse and remand. *Clewis*, 922 S.W.2d at 133–34.

### 1. Intoxication at time of accident

■ In points of error two and four, the appellant asserts the evidence was legally and factually insufficient to support a finding that he was intoxicated at the time of the accident.

We first review the evidence most favorable to the verdict. Ricky Young was driving his car behind the appellant at approximately 3:30 p.m. Young said the appellant sped up and then slowed down several times. Young saw the appellant's car speed up and then veer off the road to the left; he saw things flying up and things coming from the side of the road; and he saw the appellant's car bounce back into the road.

The appellant does not dispute he was driving his car when he hit the complainant's car. Officer Weatherford testified that he spoke to the appellant at the scene of the accident at approximately 3:50 p.m. Weatherford said the appellant had the smell of alcohol on his breath and person. Weatherford did not ask the appellant to perform any field sobriety tests because the appellant told Weatherford his neck hurt. The appellant was taken to a hospital in Bryan, Texas. Weatherford asked Officer Taylor, who was in Bryan, to draw a sample of the appellant's blood because he thought the appellant did not have the normal use of his physical and mental faculties. The appellant told Weatherford and Taylor he had been drinking. The appellant's blood was drawn at 5:40 p.m. and the analysis showed an alcohol concen-

tration of 0.20.[1] The evidence was legally sufficient to support a finding that the appellant was intoxicated at the time of the accident.

We next review all the evidence to determine if the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The appellant also contends the evidence was factually insufficient because there was no evidence that his alcohol concentration was above the legal limit or that he had lost the use of his mental and physical faculties at the time *of the accident,* rather than at the time his blood was analyzed. The appellant did not perform any field sobriety tests following the accident; there was no evidence his speech was slurred; and there was no evidence his car weaved or swerved between lanes just before the accident. He contends the State's chemist did not relate his alcohol concentration of 0.20 back to the time of the accident.

■ If the State relies upon the 0.10 definition of intoxication, then such proof will normally appear in the form of a chemical test showing the alcohol concentration in a defendant's body near the time of the offense. *Forte v. State*, 707 S.W.2d 89, 94 (Tex.Crim.App.1986). However, a conviction will not necessarily follow from the offer of such a test. *Id.* The jury must be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a 0.10 or greater alcohol concentration in his body at the time of the offense. *Id.* at 95. Many courts have sustained convictions for driving while intoxicated based, in part, on after-the-fact test results without expert extrapolation evidence. *See Forte*, 707 S.W.2d at 94–5; *Martin v. DPS*, 964 S.W.2d 772, 776 (Tex. App.—Austin 1998, no pet.); *Daricek v. State*, 875 S.W.2d 770, 772 (Tex.App.—

1. The Penal Code defines "intoxicated" to mean either (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combina-tion of two or more of those substances, or any other substance into the body or (2) having an alcohol concentration of 0.10 or more. *See* Tex. Pen.Code § 49.01(2)(A), (B).

Austin 1994, pet. ref'd); *Owen v. State,* 905 S.W.2d 434, 438–39 (Tex.App.—Waco 1995, pet. ref'd); *Wagner v. State,* 720 S.W.2d 827, 830 (Tex.App.—Texarkana 1986, pet. ref'd); *but see Mireles v. Texas Dept. of Pub. Safety,* 993 S.W.2d 426 (Tex.App.—San Antonio, 1999) (holding that breath test results taken one hour after defendant was stopped did not support a logical, reasonable inference of alcohol concentration of 0.10 or more at time of stop because reliable scientific data established alcohol concentration at time of stop might have been higher or lower than later breath test results and the record was silent as to any factor that might make one possible inference more probable than another).

The record contains sufficient evidence suggesting that the appellant was intoxicated at the time of the accident. The blood test, administered about one and one-half hours after the accident, indicated he had an alcohol concentration of almost twice the legal limit when the test was administered. Weatherford spoke to the appellant within 20 minutes of the accident, and Weatherford smelled alcohol on the appellant's breath and person. There is no evidence the appellant drank anything alcoholic between the time of the accident and the blood test. Young testified he saw the appellant speed up and slow down several times in the short distance he was behind the appellant's car just before the accident. Taylor, who was present when the blood sample was taken from the appellant at 5:38 p.m., said he smelled alcohol on the appellant. The appellant told Weatherford and Taylor that he had had a bottle of malt liquor to drink. The evidence was factually sufficient to support the verdict.

We overrule points of error two and four.

## 2. Operating a motor vehicle in a public place

■ In points of error one and three, the appellant contends the evidence was not legally or factually sufficient to support a finding that he was operating a motor vehicle in a public place when the accident occurred.

There is no dispute that the appellant's car struck the complainant's car while the complainant was sitting in it. The appellant contends there is no evidence that the driveway on which the complainant's car was parked was a public place. Therefore, the appellant concludes, if the place where the accident occurred is not a public place, then the evidence is insufficient to support his conviction. The appellant provides no support for this contention.

■ A person commits the offense of intoxication manslaughter if the person (1) operates a motor vehicle in a public place, an aircraft, or a watercraft; (2) is intoxicated; and (3) by reason of that intoxication causes the death of another by accident or mistake. *See* Tex. Pen.Code § 49.08(a)(1), (2). The unambiguous language of Section 49.08 does not require that the accident itself occur in a public place; it requires only that the defendant have *operated the motor vehicle* in a public place. The appellant's interpretation of Section 49.08 would lead to an absurd result, such that an intoxicated person could drive in a public place, veer off onto private property, and kill someone without being convicted of intoxication manslaughter. We will not construe Section 49.08 to produce such an absurd or foolish result.

There is no dispute that the appellant drove a motor vehicle on State Highway 30 just moments before the accident. There is no dispute that State Highway 30 is a public place. The evidence was legally and factually sufficient to support the verdict.

We overrule points of error one and three.

### Charge Error

## 1. Lesser included offense instruction

In point of error five, the appellant asserts the trial court erred in not including an instruction on the lesser included offense of criminally negligent homicide.

A defendant is entitled to every defensive issue raised by the evidence. *See* Tex.Code Crim. Proc. art 36.14. To be entitled to an instruction on the lesser charge, a defendant must show that (1) the elements of the lesser offense are contained within the proof necessary to establish the greater offense and (2) some evidence appears in the record from which a jury could rationally conclude that the defendant is guilty only of the lesser crime. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993); *Conroy v. State*, 843 S.W.2d 67, 71 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

The State and the appellant assert that criminally negligent homicide[2] is a lesser included offense of intoxication manslaughter.[3] *See* Tex. Pen.Code §§ 19.05, 49.08. We disagree.

In *Ormsby v. State*, 600 S.W.2d 782, 783 (Tex.Crim.App.1979), the defendant was charged with involuntary manslaughter under former Texas Penal Code section 19.05(a)(2).[4] The issue in *Ormsby* was whether criminal negligence was a lesser culpable mental state than recklessness so as to make criminally negligent homicide a lesser included offense of involuntary manslaughter. *Id.* at 783.

In 1979, when *Ormsby* was decided, a person committed the offense of involuntary manslaughter if he "by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, cause[d] death of an individual." *See* former Texas Penal Code section 19.05(a)(2). Section 19.05(a)(2) did not re-

quire proof of a culpable mental state for conviction, although Section 19.05(a)(1) required the culpable mental state of recklessness. *See* former Texas Penal Code section 19.05(a)(1) (a person commits the offense of voluntary manslaughter if he "recklessly causes the death of an individual."). The *Ormsby* Court concluded that the act of driving while intoxicated under Section 19.05(a)(2) was recklessness per se. *Ormsby*, 600 S.W.2d at 783–84. The Court next considered the various classifications of culpable mental states under Penal Code section 6.02(d), pursuant to which criminal negligence was a lesser culpable mental state than recklessness. Tex. Pen. Code § 6.02(d)(3), (4). Therefore, the Court of Criminal Appeals held criminally negligent homicide could be a lesser included offense of involuntary manslaughter. *Id.*

In 1994, the offense of involuntary manslaughter under former Texas Penal Code section 19.05(a)(2) was modified and placed in Chapter 49 of the Penal Code as the offense of intoxication manslaughter. *See* Tex. Pen.Code § 49.08(a); *Reidweg v. State*, 981 S.W.2d 399, 406 (Tex.App.—San Antonio 1998, no pet.). Although modified into its present form, the offense remained substantively the same. *Reidweg*, 981 S.W.2d at 406. Section 49.08 does not require proof of a mental state; nor does any offense under Chapter 49. *See* Tex. Pen.Code § 49.11 ("Notwithstanding Section 6.02(b), proof of a culpable mental state is not required for conviction of an offense under this chapter."). Therefore,

---

**2.** "A person commits an offense if he causes the death of an individual by criminal negligence." *See* Tex. Pen.Code § 19.05. "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* § 6.03(d).

**3.** "A person commits an offense if the person: (1) operates a motor vehicle in a public place, an aircraft, or a watercraft; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake." *See* Tex. Pen.Code § 49.08.

**4.** Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex. Gen. Laws 1698, modified by Act of May 23, 1993, 73rd Leg., R.S., ch. 900, § 1, 1993 Tex. Gen. Laws 3697 (codified at Tex. Pen.Code § 49.08(a)).

the offense of intoxication manslaughter is a strict liability crime. *See Reidweg*, 981 S.W.2d at 407. Although the offense of intoxication manslaughter derived from the offense of involuntary manslaughter, after the enactment of Section 49.11, *Ormsby's* holding that criminally negligent homicide is a lesser included offense of involuntary manslaughter to the offense of intoxication manslaughter is no longer applicable. *See Reidweg*, 981 S.W.2d at 407.

■ Because criminally negligent homicide requires proof of a negligent mental state, it cannot be a lesser included offense of intoxication manslaughter, which has no culpable mental state. Accordingly, the appellant's argument does not satisfy the first prong of the lesser-included-offense test.

■ Even if criminally negligent homicide were a lesser included offense of intoxication manslaughter, the appellant was not entitled to an instruction because there was no evidence that would permit a rational jury to find that he either did not operate a motor vehicle in a public place or his intoxication did not cause the complainant's death. *See Rathmell v. State*, 653 S.W.2d 498, 502 (Tex.App.—Corpus Christi 1983, pet. ref'd) (holding that, if record contains evidence appellant was not drunk and he failed to perceive a risk, he was entitled to charge on offense of criminally negligent homicide). The appellant does not dispute he was driving on State Highway 30 or that State Highway 30 is a public place. There was no evidence that he was not intoxicated at the time of the accident.

We overrule point of error five.

## 2. Reasonable doubt as to use of deadly weapon

■ In point of error six, the appellant asserts that the reasonable doubt instruction in the punishment charge did not properly instruct the jury on how to apply reasonable doubt on the issue of whether a vehicle is a deadly weapon. The appellant contends the instruction was misleading and confusing.

During closing arguments, it was discovered that the punishment charge did not contain a reasonable doubt definition and instruction. The trial court then included the reasonable doubt instruction from the guilt-innocence charge in the punishment charge. The jury found that the appellant's car was a deadly weapon.

The appellant contends there was error in the charge because it did not apply the reasonable doubt standard to the appellant's using or exhibiting a deadly weapon; that is, a motor vehicle, which in the manner or means of its use or intended use was capable of causing death or serious bodily injury. The appellant did not preserve error by objecting, but he contends he suffered egregious harm.

■ We undertake a two-step review of alleged error in the charge: first, we must determine whether error actually exists; second, if error does exist, we must determine whether sufficient harm resulted from the charging error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986).

The jury was charged as follows:

Now, if you believe from the evidence beyond a reasonable doubt that on or about the 11th day of August, 1995 in Grimes County, Texas, and during the commission of the offense of Intoxication Manslaughter for which you have found him guilty, the defendant, Rodney Gowans did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle, that in the manner of its use or intended use was capable of causing death or bodily injury, you shall answer the special Issue "We Do."

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will answer the Special Issue "We Do Not."

The court included the following instruction, which it took from the guilt-innocence charge:

The Prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

The Court of Criminal Appeals has held that, when reviewing alleged errors in the jury charge, "the charge must be read as a whole, and the review thereof must not be limited to any part standing alone." *Inman v. State*, 650 S.W.2d 417, 419 (Tex. Crim.App.1983); *see also Jones v. State*, 859 S.W.2d 537, 543–44 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). The charge contained an error because it did not state that the prosecution had the burden of proving beyond a reasonable doubt that the appellant used or exhibited a deadly weapon, to-wit: a motor vehicle. However, the charge, reviewed as a whole, properly informed the jurors of the "reasonable doubt" standard and instructed them to answer the special issue affirmatively only if they found, beyond a reasonable doubt, that the appellant used or exhibited a deadly weapon. Therefore, the error was harmless. *See Abdnor*, 871 S.W.2d at 732; *see also Almanza v. State*, 686 S.W.2d 157, 172 (Tex.Crim.App.1985).

We overrule point of error six.

### 3. Reasonable doubt about operating a vehicle in a public place

■ In point of error seven, the appellant asserts the guilt-innocence charge did not instruct the jury that it had to find, beyond a reasonable doubt, that the appellant operated a motor vehicle in a public place.

■ The appellant is correct that the charge contained an error because it did not require the jury to find that he was operating a motor vehicle in a public place. However, because the appellant did not object to the charge error, the error does not entitle him to a reversal unless the harm is "egregious," *i.e.*, so harmful that it denied him a fair and impartial trial. *Abdnor*, 871 S.W.2d at 732; *Almanza*, 686 S.W.2d at 172. When conducting a harm analysis, we consider the following factors: (1) the charge itself, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Bailey v. State*, 867 S.W.2d 42, 43 (Tex.Crim.App.1993).

There was no dispute that the appellant was the driver of the car that collided with the complainant's car. There was no dispute that he drove his car on State Highway 30, a public place. During closing argument, defense counsel argued that, even if the appellant was intoxicated, his intoxication did not *cause* the complainant's death. Counsel focused on a single defensive theory: the appellant's car veered off the highway because of a faulty steering mechanism. Because the appellant's defense did not rely on his *not* operating a motor vehicle in a public place, he has not shown that the error was so egregious and created such harm as to deprive him of a fair and impartial trial.

We overrule point of error seven.

### Amended Indictment

■ In point of error eight, the appellant contends that, even though he pled true to two enhancement paragraphs, the indictment did not contain two valid enhancement counts because the first enhancement paragraph was not properly amended. The appellant does not complain that the enhancement allegations surprised him or that he was unprepared to meet them. He merely asserts that the indictment was not amended on its face pursuant to *Ward v. State*, 829 S.W.2d 787 (Tex.Crim.App.1992).

The indictment contained two enhancement paragraphs. One of the paragraphs alleged "burglary of a habitation" in cause number F7804226M. Before trial, the State was granted leave to amend the paragraph and allege "theft of property of the value of $200 or more but less than $10,000" in cause number F783979NM.

The trial court interlineated the changes on the indictment.

There are two copies of the indictment in the record, one that contains interlineations and one that does not. Neither party explains why there are two copies of the indictment in the record. The appellant complains only about the copy that does not contain the interlineations. Because the record contains a copy of the indictment that was amended pursuant to *Ward*, we do not consider the appellant's complaint about the copy that contains no interlineations.

We overrule point of error eight.

We affirm the trial court's judgment.