Ex Parte Randall Lee **ROEMER,** Applicant.

No. AP–75104.

Court of Criminal Appeals of Texas.

Feb. 28, 2007.

Timothy S. Corwin, Waco, for Appellant.

Doug Arnold, Asst. District Atty., Georgetown, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Applicant was indicted for the offense of Driving While Intoxicated. Following the advice of his counsel, he stipulated to a prior offense and pled guilty. The prior involuntary-manslaughter[1] conviction was used for enhancement purposes, and he was sentenced to four years in the Texas Department of Criminal Justice—Correctional Division. Applicant filed an application for a writ of habeas corpus alleging that his counsel was ineffective for stipulating to a prior involuntary manslaughter conviction for the purposes of enhancing his offense to a felony and, as a result, his sentence was illegal. We filed and set the application and requested briefing on this issue and the issue of whether Applicant is estopped from raising an illegal-sentence claim.

## ANALYSIS

■ Applicant stipulated to a 1990 conviction for involuntary manslaughter, and this conviction was used to enhance his offense to a felony. Texas Penal Code Section 49.09 governs the enhancement of intoxication offenses and states that:

(a) Except as provided by Subsection (b), an offense under Section 49.04, 49.05, 49.06, or 49.065 is a Class A misdemeanor, with a minimum term of confinement of 30 days, if it is shown on the trial of the offense that the person has

---

1. The initial indictment stated that Applicant had a prior conviction for intoxication manslaughter. The indictment was later correct-ed to say that the prior conviction was for involuntary manslaughter.

previously been convicted one time of an *offense relating to the operating of a motor vehicle while intoxicated,* an offense of operating an aircraft while intoxicated, an offense of operating a watercraft while intoxicated, or an offense of operating or assembling an amusement ride while intoxicated.

(b) An offense under Section 49.04, 49.05, 49.06, or 49.065 is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted:

(1) *one time* of an offense under Section 49.08 [intoxication manslaughter] or an offense under the laws of another state if the offense contains elements that are substantially similar to the elements of an offense under Section 49.08; or

(2) *two times* of any other *offense relating to the operating of a motor vehicle while intoxicated,* operating an aircraft while intoxicated, operating a watercraft while intoxicated, or operating or assembling an amusement ride while intoxicated.

(c) For the purposes of this section:

(1) *"Offense relating to the operating of a motor vehicle while intoxicated"* means:

(A) an offense under Section 49.04 or 49.045;

(B) an offense under Section 49.07 or 49.08, if the vehicle operated was a motor vehicle;

(C) an offense under Article 6701l–1, Revised Statutes, as that law existed before September 1, 1994;

(D) an offense under Article 6701l–2, Revised Statutes, as that law existed before January 1, 1984;

(E) *an offense under Section 19.05(a)(2), as that law existed before September 1, 1994, if the vehicle operated was a motor vehicle;* or

(F) an offense under the laws of another state that prohibit the operation of a motor vehicle while intoxicated.

(emphasis added). Applicant's sentence was enhanced under Section 49.09(b)(1), which increases an offense to a third-degree felony when the defendant has previously been convicted of intoxication manslaughter. As stated above, Applicant's prior conviction was not for intoxication manslaughter, but for involuntary manslaughter under former Penal Code Section 19.05(a)(2). The only mention of the statute under which Applicant was convicted in 1990 is in Section 49.09(c)(1)(E), which defines the term "offense relating to the operating of a motor vehicle while intoxicated." This term is used in Section 49.09(a) and is also used in Section 49.09(b)(2). However, the term is not used in Section 49.09(b)(1), under which Applicant's sentence was enhanced to a felony. Thus, there are two situations in which Section 49.09 permits prior offenses relating to the operating of a motor vehicle while intoxicated to be used for enhancement, and only one of those situations applies in this case. First, a prior offense relating to the operating of a motor vehicle while intoxicated may be used to raise an offense from a Class B misdemeanor to a Class A misdemeanor under Section 49.09(a). Second, if a defendant has two prior convictions for offenses relating to the operating of a motor vehicle while intoxicated, then his current offense may be enhanced to a third-degree felony under Section 49.09(b)(2). Therefore, because Applicant has only one prior conviction for an offense relating to the operating of a motor vehicle while intoxicated and does not have even a single conviction for intoxication manslaughter, his sentence cannot properly be enhanced to a felony. Instead, Applicant's stipulation to a prior

offense relating to the operating of a motor vehicle while intoxicated should have only raised his offense from a Class B misdemeanor with a minimum term of 72 hours[2] to a Class A misdemeanor with a minimum term of confinement of 30 days under Section 49.09(a). Therefore, Applicant's current sentence is illegal.

Although the statute treats the former offense of involuntary manslaughter under 19.05(a)(2) and the current offense of intoxication manslaughter differently, the fact that the legislature included the former offense under the definition of an "offense relating to the operating of a motor vehicle while intoxicated" indicates that the legislature was aware of the statute's distinct treatment of the offenses. Perhaps the legislature took out the confusing 10-year rule[3] but left Section 49.09(b), which calls for different treatment of offenses that occurred prior to September 1, 1994, in order to give less effect to offenses from the distant past. While the issue in this case appears to be similar to the situation in *Griffith v. State*, 116 S.W.3d 782 (Tex.Crim.App.2003), the cases can be distinguished. In *Griffith*, the State sought to use prior offenses of rape and aggravated rape to enhance the appellant's punishment for his current sexual-assault charge. We held that the State could use the prior offenses for enhancement purposes although rape and aggravated rape were not offenses listed in the enhancement statute. We interpreted the penal code section regarding penalties for repeat and habitual felony offenders as including the statutory predecessors of the offenses listed in the statute. The difference between these cases is that the statute in *Griffith* does not even mention the offense of rape, while the statute in the case before us refers to former Section 19.05(a)(2) involuntary

manslaughter in the definition section, and even directs us how to deal with that offense. When the legislature specifically instructs us how to deal with an offense, we should give effect to each word and follow their direction. If this differing treatment for similar offenses is not what the legislature intended, then they can again alter the statute accordingly.

█ The State argues that Applicant is estopped from asserting a claim that his sentence is illegal because he stipulated to the prior offense and pled guilty. However, estoppel does not apply here because there is no invited error in this case. Invited error is when a party asks for something, gets what they ask for, and then complains about it. Applicant simply stipulated to a prior conviction that was erroneously used to enhance his sentence to a felony when it should have been used only to enhance from a Class B misdemeanor to a Class A misdemeanor. He did not ask for his stipulation to be used to enhance his sentence to a level that is not allowed under the statute, which is what occurred in this case. He did plead guilty to an offense of a higher classification than that for which he was eligible, but this is not invited error. If a defendant was charged with criminally negligent homicide, but was somehow induced by the State to plead guilty to manslaughter, then his sentence for a second-degree felony would be illegal because he was charged with only a state-jail felony.

█ Similarly, in this case, Applicant was encouraged to plead guilty to felony DWI when he was charged with only a Class A misdemeanor DWI. This is the basis for Applicant's ineffective-assistance claim. Applicant's attorney states that he "intensively researched" the issue of

---

**2.** See Penal Code Section 49.04(b).

**3.** See former Section 49.09(e) (2001); *Getts v. State*, 155 S.W.3d 153 (Tex.Crim.App.2005).

whether the prior conviction could be used to enhance the offense to a felony. He determined that the enhancement was proper based on an unpublished memorandum opinion by the First District Court of Appeals, *Louviere v. State,* No. 01–02–00504–CR, 2003 WL 360909 (Tex.App.-Houston [1st Dist.] February 20, 2003) (not designated for publication), 2003 Tex. App. LEXIS 1583. On facts similar to Applicant's case, *Louviere* allowed the use of a past involuntary-manslaughter conviction for enhancement purposes based on the determination in *Gowans v. State,* 995 S.W.2d 787, 792 (Tex.App.-Houston [1st Dist.] 1999), that, although involuntary manslaughter under former Penal Code Section 19.05(a)(2) was modified into intoxication manslaughter, "the offense remained substantively the same." However, the issue in *Gowans* was whether criminally negligent homicide was a lesser-included offense of intoxication manslaughter. The court's conclusion was simply that, when involuntary manslaughter under former Penal Code Section 19.05(a)(2) was modified into intoxication manslaughter, the offense still did not require proof of a culpable mental state for conviction. Rather than advise his client that the enhancement was proper under *Louviere,* Applicant's attorney could have argued that *Louviere* was incorrect because it not only mischaracterized *Gowans'* statement that the offense remained substantively the same as the court's "holding," but also took the statement totally out of context. However, because counsel's decision was based on existing caselaw, it was not ineffective assistance for counsel to advise Applicant to accept the plea.

## CONCLUSION

Although Applicant's attorney offered reasonable assistance, Applicant's prior conviction for involuntary manslaughter was improperly used to enhance his sentence to a felony, and thus Applicant is serving an illegal sentence. Relief is granted.

KEASLER, J., filed a concurring opinion, in which HERVEY, J., joined.

COCHRAN, J., filed a dissenting opinion.

JOHNSON, J., concurred in the result.

KEASLER, J., filed this concurring opinion in which HERVEY, J., joined.

Randall Lee Roemer pled guilty to driving while intoxicated in exchange for a four-year sentence recommendation. Roemer now claims that his counsel was ineffective for stipulating to an alleged improper enhancement conviction and that his sentence was illegal. I join the Court's opinion but write separately to explain why our precedent supports the finding that counsel was effective and why the result under the plain language of the statute is troublesome.

### Facts and Procedural History

Roemer was charged with driving while intoxicated ("DWI") on May 8, 2003.[1] The indictment alleged that he used or exhibited a deadly weapon during the commission of the primary offense. It also contained a jurisdictional enhancement paragraph alleging that Roemer had a 1990 conviction for "intoxication" manslaughter. Under Section 49.09(b)(1) of the Texas Penal Code, an intoxication manslaughter conviction elevated Roemer's primary offense from a Class A misdemeanor to a third-degree felony with a punishment range of

---

1. TEX. PEN.CODE ANN. § 49.04 (Vernon 2001).

two to ten years' imprisonment and a fine not to exceed $10,000.[2] Section 49.09(b) states in pertinent part:

> (b) An offense under Section 49.04, 49.05, 49.06, or 49.065 is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted:
>
> (1) one time of an offense under Section 49.08 [intoxication manslaughter] or an offense under the laws of another state if the offense contains elements that are substantially similar to the elements of an offense under Section 49.08; or
>
> (2) two times of any other offense relating to the operating of a motor vehicle while intoxicated, operating an aircraft while intoxicated, operating a watercraft while intoxicated, or operating or assembling an amusement ride while intoxicated.[3]

The State later amended the indictment to reflect that Roemer had been convicted of "involuntary" manslaughter under former Section 19.05(a)(2) of the Penal Code, not "intoxication" manslaughter under Section 49.08.[4]

At the time of Roemer's 1990 involuntary manslaughter conviction, there was no offense called "intoxication" manslaughter. Rather, Section 19.05(a) provided that involuntary manslaughter could be committed in one of two ways: (1) by "recklessly caus[ing] the death of an individual"; or (2) "by accident or mistake when operating a motor vehicle, airplane, helicopter, or boat while intoxicated and, by reason of such intoxication, caus[ing] the death of an individual."[5] Following legislation that took effect in 1994, the second way (under which Roemer had been convicted in 1990) is now known as "intoxication" manslaughter under Section 49.08 of the Penal Code.[6] "Before September 1, 1994, manslaughter and intoxication manslaughter were merely alternate methods of committing the offense of involuntary manslaughter under former § 19.05."[7]

Because Section 49.09(b)(1) did not specifically authorize enhancement by using an involuntary manslaughter conviction under 19.05(a)(2), Roemer's counsel researched whether the enhancement was proper. At that time, we had not rendered an opinion on the matter. But Roemer's counsel "review[ed] related case and statutory law ... and concluded that the use of the involuntary manslaughter conviction to increase the status of Mr. Roemer's DWI offense to a felony was legitimate." Counsel "based [his] conclusion largely on [his] reading of an unpublished opinion from the 1st Court of Appeals, *Louviere v. State* [,]" which held that the trial court's use of an involuntary manslaughter conviction to enhance an offense was not error.[8]

Roemer's counsel "explained the results of [his] research and [his] conclusions to

2. TEX. PEN.CODE ANN. § 49.09(b)(1) (Vernon 2005).

3. TEX. PEN.CODE ANN. § 49.09(b).

4. *Id.*

5. Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex. Gen. Laws 1698, 1698, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614, 3766.

6. *See* TEX. PEN.CODE ANN. § 49.08(a) (Vernon 2003).

7. *Ex parte Ervin*, 991 S.W.2d 804, 815 (Tex. Crim.App.1999).

8. *Louviere v. State*, No. 01–02–00504–CR, 2003 WL 360909 (Tex.App.-Houston [1st Dist.] Feb. 20, 2003, no pet.).

Mr. Roemer ... [who then] asked [counsel] to negotiate a plea agreement with the District Attorney's Office to dispose of his case." Counsel "negotiated a punishment recommendation from the State of 5 years in prison in exchange for a guilty plea by Mr. Roemer to the felony offense of driving while intoxicated. The State also agreed to waive the deadly weapon allegation...." On the day of trial, Roemer's counsel negotiated an even more lenient four-year sentence. After consulting with his counsel, Roemer pled guilty to felony DWI. The trial judge accepted Roemer's plea, found him guilty, and sentenced him to four years' imprisonment pursuant to the plea agreement.

Roemer filed this application for a writ of habeas corpus claiming that his counsel was ineffective for stipulating to the validity of his prior conviction for enhancement and that he received an illegal sentence. The trial judge filed findings of fact and conclusions of law, which included the following:

- At his guilty plea hearing, Roemer told the trial judge that he was satisfied with his attorney and that his attorney had represented him adequately and advised him fully as to the law and facts of his case.

- Roemer's attorney extensively researched whether the State could increase Roemer's DWI charge to a felony based on his prior involuntary manslaughter conviction.

- Roemer's attorney explained to him that the State's use of the prior conviction was legitimate but that Roemer could challenge that use by pleading not guilty and by appealing any resulting conviction.

- When he pled guilty to felony DWI, Roemer was aware of the legal issue concerning the use of his involuntary manslaughter conviction to elevate his DWI offense to a felony and was aware that he could challenge the use of his prior conviction at trial and on appeal.

- Roemer knowingly and voluntarily chose to waive that issue, and all other legal and factual issues associated with his case, by pleading guilty to felony DWI and accepting a negotiated punishment.

- Roemer's attorney was not deficient in his representation of Roemer.

## I. Ineffective Assistance of Counsel

"To obtain habeas corpus relief for ineffective assistance of counsel under *Strickland v. Washington*,[9] an applicant must show that his counsel's performance was deficient and that there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance."[10] Roemer argues that "his counsel's performance was deficient in his first stipulating to the wrong prior intoxication conviction, and in not challenging the imposition of a felony sentence after it was clear that the State did not have, and could not have sufficient proof to convict [Roemer] of a felony." In response, the State contends that his "representation ... was not deficient under an objective standard of reasonableness" because Roemer's counsel identified and researched the legal issue in the State's in-

9.  466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

10.  *Ex parte Chandler*, 182 S.W.3d 350, 353–54 (Tex.Crim.App.2005) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; citing *Ex parte White*, 160 S.W.3d 46, 49 (Tex.Crim.App. 2004)).

dictment, found case law supporting the use of Roemer's 1990 conviction for enhancement, explained those findings and his opinion to Roemer, and then left the decision of whether to dispute the use of that conviction or enter a plea agreement to his client. In fact, the State argues, Roemer's attorney "could have done nothing more than he did other than force [Roemer] to litigate the legal issue presented by the State's indictment."

An appellate court gives "almost total deference to a trial judge's determination of the historical facts supported by the record, especially when those fact findings are based on an evaluation of credibility and demeanor." [11] The trial judge in this case found that "[a]t the time he pleaded guilty to the felony offense of driving while intoxicated, [Roemer] was aware of the legal issue concerning the use of his prior conviction for involuntary manslaughter to elevate his DWI offense to a felony." The judge also found that Roemer was aware he could challenge the use of his prior conviction using trial and appeal procedures. Because the record supports them, these findings receive great deference.[12]

In *Ex parte Chandler*, we explained that "a reasonably prudent attorney in Texas is not constitutionally deficient if he relies upon pertinent judicial opinions in assessing the validity of a legal proposition." [13] Moreover, because " 'what an attorney thinks the law is today may not be what a court decides tomorrow[,]' ... 'the rule

that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized.' " [14] "[C]ounsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law." [15] We also stated that "legal advice which only later proves to be incorrect does not normally fall below the objective standard of reasonableness under *Strickland*." [16]

Roemer's counsel's legal advice was correct at the time he offered it. Counsel relied on the only available opinion dealing with the issue. "[T]he state of the law in effect during the time of trial" [17] consisted of a single opinion, which clearly resolved the issue against his client. Counsel thoroughly explained the legal issue and the effect of the court of appeals's opinion to his client. But the final decision to accept the plea agreement was Roemer's alone. It could not, therefore, be counsel's judgment error. Roemer's counsel's actions fall squarely within our explanation of effective assistance of counsel in *Ex parte Chandler*.

Moreover, "the only required duty of counsel under the most liberal construction when a plea of guilty is entered is that counsel should ascertain if the plea is entered voluntarily and knowingly." [18] Roemer's counsel fulfilled that duty in this case. Because Roemer cannot satisfy

---

11. *Ex parte Briseno*, 135 S.W.3d 1, 12–13 (Tex.Crim.App.2004).

12. *Id.*

13. *Ex parte Chandler*, 182 S.W.3d at 358.

14. *Id.* (quoting 3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 18.1, at 2 (5th ed.2000)).

15. *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim.App.1998) (citing *Vaughn v. State*, 931 S.W.2d 564, 567 (Tex.Crim.App.1996)).

16. *Ex parte Chandler*, 182 S.W.3d at 359.

17. *Ex parte Welch*, 981 S.W.2d at 184.

18. *Butler v. State*, 499 S.W.2d 136, 139 (Tex. Crim.App.1973) (citing *Lamb v. Beto*, 423 F.2d 85, 87 (5th Cir.1970); *Gotcher v. Beto*, 444 F.2d 696 (5th Cir.1971)).

*Strickland's* first prong, an evaluation of the second prong is unnecessary.

## II. Illegal Sentence

Today the majority decides that Roemer's sentence is illegal "because [Roemer] has only one prior conviction for an offense relating to the operating of a motor vehicle while intoxicated [ (involuntary manslaughter under former Penal Code Section 19.05(a)(2)) ] and does not have even a single conviction for intoxication manslaughter."[19] Because Roemer's prior conviction for involuntary manslaughter is substantially similar to the current offense of intoxication manslaughter, but the statute treats the two offenses differently, I write separately to point out this inconsistency.

Section 49.09 of the Texas Penal Code governs enhancement of intoxication-related offenses and provides in pertinent part:

(b) An offense under Section 49.04 [ (Driving While Intoxicated) ], 49.05 [ (Flying While Intoxicated) ], 49.06 [ (Boating While Intoxicated) ], or 49.065 [ (Assembling or Operating an Amusement Park Ride While Intoxicated) ] is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted:

(1) one time of an offense under Section 49.08 [ (Intoxication Manslaughter) ] or an offense under the laws of another state if the offense contains elements that are substantially similar to the elements of an offense under Section 49.08; or

(2) two times of any other offense relating to the operating of a motor vehicle while intoxicated, operating an aircraft while intoxicated, operating a watercraft while intoxicated, or operating or assembling an amusement ride while intoxicated.

(c) For the purposes of this section:

(1) "Offense relating to the operating of a motor vehicle while intoxicated" means:

(A) an offense under Section 49.04 [ (Driving While Intoxicated) ] or 49.045 [ (Driving While Intoxicated With Child Passenger) ];

(B) an offense under Section 49.07 [ (Intoxication Assault) ] or 49.08 [ (Intoxication Manslaughter) ], if the vehicle operated was a motor vehicle;

(C) an offense under Article 6701l–1, Revised Statutes [ (Driving While Intoxicated) ], as that law existed before September 1, 1994;

(D) an offense under Article 6701l–2, Revised Statutes [ (Driving While Intoxicated) ], as that law existed before January 1, 1984;

(E) an offense under Section 19.05(a)(2) [ (Involuntary Manslaughter) ], as that law existed before September 1, 1994, if the vehicle operated was a motor vehicle; or

(F) an offense under the laws of another state that prohibit the operation of a motor vehicle while intoxicated.[20]

"Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."[21] If a statute's

---

**19.** *Ante,* op. at 889.

**20.** Tex. Penal Code Ann. § 49.09.

**21.** *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex. Crim.App.1967).

meaning "should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning."[22] Because Section 49.09 explicitly refers to former Section 19.05(a)(2), its plain language prevents us from considering extratextual factors. But when Section 49.09 is evaluated in its entirety, the results are incongruous. The following hypothetical cases illustrate the inconsistency.

- Defendant # 1: Convicted in Texas of Involuntary Manslaughter under former Texas Penal Code Section 19.05(a)(2) on August 31, 1994, and currently on trial for the offense of Driving While Intoxicated under Texas Penal Code Section 49.04 committed on February 1, 2003. Under the majority's opinion, the current DWI offense may not be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1). It may only serve as one of two necessary predicate convictions under Section 49.09(b)(2) and 49.09(c)(1)(E) to enhance the current DWI offense to a third-degree felony.

- Defendant # 2: Convicted in Texas of Intoxication Manslaughter under Texas Penal Code Section 49.08 on September 1, 1994, and currently on trial for the offense of Driving While Intoxicated under Texas Penal Code Section 49.04 committed on February 1, 2003. The current DWI offense may be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1).

- Defendant # 3: Convicted in another state of an offense with similar elements to Intoxication Manslaughter under Texas Penal Code Section 49.08 on August 31, 1994, and currently on trial for the offense of Driving While Intoxicated under Texas Penal Code Section 49.04 committed on February 1, 2003. The current DWI offense may be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1).

- Defendant # 4: Convicted in another state of an offense with similar elements to Intoxication Manslaughter under Texas Penal Code Section 49.08 on September 1, 1994, and currently on trial for the offense of Driving While Intoxicated under Texas Penal Code Section 49.04 committed on February 1, 2003. The current DWI offense may be enhanced to a third-degree felony under Texas Penal Code Section 49.09(b)(1).

Consequently, under a plain reading of the statute and the majority's decision, only a defendant convicted of involuntary manslaughter under former Section 19.05(a)(2) escapes felony-level punishment without an additional conviction as required by Section 49.09(b)(2). As the hypothetical cases show, Section 49.09 poses a similar inconsistency to the statute we examined in *Ex parte Ervin*.[23] There, we considered "whether *Government Code Section 508.149(a)* [could] be read to include former *Penal Code Section 21.09*."[24] We noted that the language of Section 508.149(a) did "not include former statutes such as sexual abuse of a child, rape of a child, rape, or aggravated rape" and that there was "no explicit catch-all provision that would include all prior versions of the

**22.** *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

**23.** *Ex parte Ervin,* 187 S.W.3d 386, 388 (Tex. Crim.App.2005).

**24.** *Id.* (emphasis in original).

offenses listed in *Section 508.149.*[25] Nevertheless, we explained that

> If we were to apply the literal meaning of the words in Section 508.149, conduct committed on the day before the effective date of the repealed sexual offense statutes would make an inmate eligible for mandatory supervision release. But, the same conduct committed just a day later would render the inmate ineligible for mandatory supervision release. It sometimes happens that defendants are sentenced to more or less severe punishment for the same conduct based on the date on which the offense is committed. But in this context, we cannot believe that the legislature intended to produce these results.[26]

Similar to the result in *Ex parte Ervin*, Defendant # 1's previous conviction for involuntary manslaughter under Section 19.05(a)(2) on August 31, 1994, would not enhance his current DWI offense to a third-degree felony without another conviction for an "offense relating to the operating of a motor vehicle while intoxicated."[27] But if Defendant # 1 had been convicted one day later (September 1, 1994) of intoxication manslaughter under Section 49.08 (the statutory successor to former Section 19.05(a)(2)), his current DWI offense would be enhanced by that single conviction, just as Defendant # 2. Moreover, Defendant # 1's current DWI offense would be enhanced by a single previous conviction on August 31, 1994, in another state of an offense with substantially similar elements, just as Defendant # 3. And if Defendant # 1 had been convicted the next day (September 1, 1994) of an offense with substantially similar elements in another state, the current DWI offense would also be enhanced by that one previous conviction, just as Defendant # 4.

The inconsistencies illustrated by these hypothetical cases demonstrate that Section 49.09 gives preferential treatment to defendants with involuntary manslaughter convictions under former Section 19.05(a)(2) by requiring an additional prior conviction under Section 49.09(b)(2). The current DWI offenses for Defendants # 2 through # 4, however, are all subject to enhancement using only one conviction for substantially the same previous conviction as Defendant # 1. Because Section 49.09's language is not ambiguous and explicitly addresses Section 19.05(a)(2), I cannot say that the Legislature did not intend the result or that there are two reasonable, yet different, interpretations of Section 49.09.[28] But bias in favor of offenders such as Defendant # 1 is a consequence of a plain reading of the statute.

Additionally, Section 49.09(c)(1)(B) explicitly includes intoxication manslaughter as an "offense relating to the operating of a motor vehicle while intoxicated."[29] That conviction may therefore serve as one of the two required predicate convictions to enhance a defendant's current DWI offense to a third-degree felony under Section 49.09(b)(2).[30] But under Section 49.09(b)(1), only one prior conviction for intoxication manslaughter is necessary to enhance the current DWI offense to a third-degree felony. Section 49.09(c)(1)(B) appears to be superfluous because only one prior conviction for intoxication man-

---

25. *Id.* (emphasis in original).

26. *Id.*

27. Tex. Penal Code Ann. § 49.09(b)(2).

28. *See Ex parte Spann,* 132 S.W.3d 390, 393 (Tex.Crim.App.2004); *Muniz v. State,* 851 S.W.2d 238, 244 (Tex.Crim.App.1993).

29. Tex. Penal Code Ann. § 49.09(c)(1)(B).

30. *Id.* § 49.09(b)(2).

slaughter is required for enhancement to a third-degree felony under Section 49.09(b)(1), yet the same offense may serve as one of the two prior convictions required by Section 49.09(b)(2). If one prior conviction for intoxication manslaughter is sufficient to enhance a DWI offense to a third-degree felony under Section 49.09(b)(1), then it seems unnecessary to have it serve as one of two offenses under Section 49.09(b)(2).

Although the statute is incongruous and appears to distinguish convictions solely by date of offense, established principles of statutory construction and separation of powers prevent this Court from "legislating from the bench" to correct a perceived inconsistency in a statute.

The dissent maintains that our decision in *Griffith v. State*[31] is controlling and criticizes the majority for failing to acknowledge and follow this unanimous precedent. The dissent should not be so quick to conclude that "[a] strict literal reading of section 49.09 ... would lead to exactly the absurd results that this Court unanimously rejected in *Griffith*"[32] without acknowledging the entire text of the statute. The dissent's interpretation actually expands, rather than follows, *Griffith*. In *Griffith*, we considered "whether Penal Code Section 12.42(c)(2)(B) includes the statutory predecessors to the offenses enumerated therein."[33] We determined that the statutory predecessors were included in the offenses enumerated in the statute.[34] We reached the same result in *Ex parte Ervin*, finding that Section 508.149(a) of the Gov-

ernment Code included the statutory predecessor offenses.[35] But the logic used by the Court in *Griffith* and *Ex parte Ervin* does not apply to the statute at issue in this case. The text of the statutes in *Griffith* and *Ex parte Ervin* did not refer to the predecessor offenses.[36] Here, the predecessor offense is specifically enumerated in another part of the statute as an "offense relating to the operating of a motor vehicle while intoxicated,"[37] which may only serve as one of two previous convictions required by Section 49.09(b)(2).[38]

Although the results under the DWI enhancement statute are inconsistent, our reasoning in *Griffith* and *Ex parte Ervin* does not apply here. For the statute here to be analogous to those in *Griffith* and *Ex parte Ervin*, we would have to subtract Section 49.09(c)(1)(B) from the statute, which expressly refers to the statutory predecessor offense. Deleting part of a statute is not within the province of this Court.[39] If Section 49.09 did not explicitly name former Section 19.05(a)(2), then this case might have been on equal footing with *Griffith* and *Ex parte Ervin*, where the statutes were silent about predecessor offenses in their entirety. Because the Legislature explicitly included the predecessor offense in this statute, I cannot agree that our decisions in *Griffith* and *Ex parte Ervin* control. But I would urge the Legislature to take a close look at the results under a plain reading of Section 49.09 when considering the use of former Section 19.05(a)(2) for enhancement purposes.

**31.** 116 S.W.3d 782 (Tex.Crim.App.2003).

**32.** *Post,* op. at 889.

**33.** *Griffith,* 116 S.W.3d at 784.

**34.** *Id.*

**35.** *Ex parte Ervin,* 187 S.W.3d at 388.

**36.** *Id.; Griffith,* 116 S.W.3d at 786.

**37.** Tex. Penal Code Ann. § 49.09(c)(1)(B).

**38.** *Id.* § 49.09(b)(2).

**39.** *Ex parte Davis,* 412 S.W.2d at 52.

With these comments, I join the Court's opinion.

COCHRAN, J., filed a dissenting opinion.

I respectfully dissent because the result in this case should be controlled by our recent unanimous decision in *Griffith v. State*.[1] Applicant's sentence is not illegal, and his trial attorney was not ineffective for declining to object to enhancement with the 1990 "involuntary manslaughter" conviction because that offense had been renamed in 1994 as "intoxication manslaughter." Applicant's attorney accurately predicted this Court's decision in *Griffith*. A rose by any other name is still a rose. Involuntary manslaughter under former section 19.05(a)(2) is exactly the same offense that is currently titled "intoxication manslaughter" under section 49.08.[2]

In *Griffith*, this Court exercised common-sense and logic in concluding that just because "rape" and "aggravated rape" had changed their names to "sexual assault" and "aggravated sexual assault," the offenses themselves had not changed one whit. Thus, a prior conviction for "rape" could be used for enhancement purposes under section 12.42(c)(2) "even though those offenses are not specifically enumer-

ated in the statute."[3] In *Griffith*, we concluded that if the enhancement statute were read literally, the result would be an absurd one that the legislature never could have intended.[4] We stated:

The literal language of the provision dictates that defendants convicted of a prior rape or aggravated rape avoid an automatic life sentence simply because they committed the crime when it was titled differently in the Penal Code.... This would lead to disparate treatment of repeat sex offenders. The plain language dictates that prior convictions for "substantially similar" offenses from all forty-nine other states are available for such enhancements, but the statute does not explicitly refer to the enhancement for "substantially similar" offenses in Texas. Under the construction proposed by the appellant, prior convictions for rape and aggravated rape from any other state could be used to enhance a later offense, but prior convictions for rape and aggravated rape from Texas could not be used.[5]

Today, we fail to follow our own unanimous precedent and fail to distinguish it in any meaningful way.

If "rape" and "aggravated rape" are the same crimes as "sexual assault" and "ag-

1. 116 S.W.3d 782 (Tex.Crim.App.2003) (concluding that the defendant's prior convictions for "rape" and "aggravated rape," although not entitled "sexual assault" or "aggravated sexual assault" were the predecessors of those offenses and statutorily indistinguishable except in name; holding that those predecessor offenses are included in the enhancement provisions of Penal Code).

2. The elements of involuntary manslaughter under former section 19.05(a)(2) were: "(a) A person commits an offense if he ... by accident or mistake when operating a motor vehicle, airplane, helicopter, or boat while intoxicated and, by reason of such intoxication, causes the death of an individual."

The elements of intoxication manslaughter under current section 49.08 are:
"(a) A person commits an offense if the person: (1) operates a motor vehicle in a public place, operates an aircraft, a watercraft, or an amusement ride, or assembles a mobile amusement ride; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake."

3. 116 S.W.3d at 784.

4. *See, e.g., Ex parte Ervin*, 187 S.W.3d 386, 388 (Tex.Crim.App.2005) (noting that courts do not apply the literal meaning of the words in a statute if the result would be absurd).

5. *Griffith*, 116 S.W.3d at 786.

gravated sexual assault," why is "involuntary manslaughter" under former section 19.05(a)(2) not the same crime as "intoxication manslaughter" under section 49.08? A strict literal reading of section 49.09, the enhancement provisions for intoxication offenses, would lead to exactly the absurd results that this Court unanimously rejected in *Griffith*. The Court suggests that because the Legislature did remember to mention the statutory predecessor of intoxication manslaughter in one section of the DWI enhancement law, its omission in another section must have been intentional. Therefore, according to the majority, this situation is different from that in *Griffith* because the statutory predecessors of sexual assault and aggravated sexual assault were not mentioned at all in the *Griffith* enhancement sections. Thus, complete forgetfulness is forgivable, but partial forgetfulness is not.

Under section 49.09(b) a DWI offense is a felony of the third degree if the defendant has previously been convicted "one time of an offense under Section 49.08 [intoxication manslaughter] or an offense under the laws of another state if the offense contains elements that are substantially similar to the elements of an offense under Section 49.08." [6] Thus, any prior conviction from any other state for any offense which had substantially similar elements to intoxication manslaughter under section 49.08 can be used to enhance an intoxication offense under section 49.09. Such prior involuntary/intoxication manslaughter convictions from Maine, California, or North Dakota may be used to enhance a Texas DWI, but, according to the majority, the Legislature intentionally forbade the use of a *Texas* prior conviction for involuntary manslaughter even though the elements are exactly the same as intoxication manslaughter. We rejected this logic in *Griffith*, and we should reject it today. It leads to absurd results which assume that the Texas Legislature intended a statute that discriminates against its own prior laws.

The incomparable Judge Learned Hand once admonished that statutes "should be construed not as theorems of Euclid, but with some imagination of the purposes which lie behind them." [7] Courts normally recognize that the purposes in drafting a statute control their interpretation rather than the application of algebraic formulae. [8] Indeed, we recently reiterated that the first command in statutory interpretation is to use common sense in divining the evident purpose of the statute:

> When we interpret a statute, we try to give effect to the collective intent or purpose of the legislature. We interpret a statute according to the literal meaning of the words in the statute, unless doing so would lead to an absurd result that the legislature could not have in-

---

**6.** Tex. Penal Code § 49.09(b).

**7.** *Lehigh Valley Coal Co. v. Yensavage*, 218 F. 547, 553 (2d Cir.1914).

**8.** *See, e.g., United States v. Brown*, 333 U.S. 18, 25–26, 68 S.Ct. 376, 92 L.Ed. 442 (1948) ("The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose."); *SEC v. C.M. Joiner Leasing Co.*, 320 U.S. 344, 350–51, 64 S.Ct. 120, 88 L.Ed. 88 (1943) (courts "construe the details of an act in conformity with its dominant general purpose, will read text in the light of the context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy"); *Fagot v. Flintkote Co.*, 305 F.Supp. 407, 411 (E.D.La.1969) ("It is an axiom of statutory interpretation that the purpose of a law furnishes the best guide to its application. It is no longer meet, ... to attempt to construe a statute by the literal reading of its words, as if the statute were a tape measure to set beside a length of cloth.").

tended. If the literal meaning of the words in the statute produce absurd results, we resort to extratextual factors to arrive at a sensible interpretation of the statute and bring about the legislature's intent.[9]

In this case we suggest that maybe the Legislature intended to exclude musty old pre–1994 Texas involuntary manslaughter convictions from being used for enhancement purposes, even though it did explicitly include musty old pre–1994 involuntary/intoxication manslaughter convictions from any other state for enhancement purposes. I see nothing in the statute to support this suggestion.[10] Alternatively, we rap the legislature's knuckles for its less-than-perfect draftsmanship with the schoolmarm's admonition to "alter the statute accordingly." [11] I think we should give greater deference to the statutory purpose and not make a fortress out of the grammarian's correction book.

I conclude that applicant's DWI charge was properly enhanced with his 1990 involuntary manslaughter conviction. He is not serving an illegal sentence.

I therefore respectfully dissent.

---

**9.** *Ex parte Ervin,* 187 S.W.3d at 388 (footnote omitted).

**10.** Indeed, the explicit inclusion of former section 19.05(a)(2) as an "Offense relating to the operation of a motor vehicle while intoxicated" under section 49.09(c)(1)(E) is an excellent indication that the legislature did intend to include—and did in fact include—these pre–1994 Texas involuntary manslaughter convictions in its felony enhancement scheme. The argument, apparently, is that the legislature explicitly intended these pre–1994 involuntary manslaughter convictions to be used to enhance a current DWI from a Class B misdemeanor to a Class A misdemeanor, but not to a third degree felony as are post–1994 intoxication manslaughter or out-of-state pre- or post-involuntary manslaughter convictions.

